John A. Blumenfeld, Clayton, Robert C. Ely, St. Louis, for respondent.

**STATE of Missouri, ex rel. Leroy YATES and Doris Jean Yates, Relators,**

v.

**Honorable Drew W. LUTEN, Jr., Judge, Circuit Court, St. Louis County, Respondent.**

No. 39987.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 3, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

STEPHAN, Presiding Judge.

This is an original proceeding in mandamus. For reasons hereinafter stated, we quash the writ.

As best we can glean from the record, the facts leading up to the issuance of our alternative writ are as follows. In August 1973, relators filed suit in the Circuit Court of St. Louis County alleging that in January 1972 they had been injured as a direct result of the negligence of Vincent Nania, Sr. We are not told of the nature of the negligence alleged. However, it is admitted on behalf of the respondent, Judge Luten, that, at the time of injury to relators, Mr. Nania was insured against claims arising out of his negligence, that the coverage was in the amount of $50,000, and that the prayer in the damage suit was in the amount of $35,000. Relators assert here that Mr. Nania died on December 24, 1974, but that they did not discover such fact until the damage suit "came to a position where it might be reached on the trial docket." In the return, respondent states that the information was imparted to relators' attorney on December 23, 1975 during

a pre-trial conference in respondent's chambers. Relators do not traverse this in their reply. Relators state in their petition that at the time they discovered the fact of Mr. Nania's death, his estate had been closed and all assets distributed. Respondent's return asserts that the estate remained open for more than one year after the fact of Mr. Nania's death was communicated to relators' attorney, a fact which we take as true as it is not responded to in relators' reply. In any event, the estate was closed when relators sought to reopen it in October, 1977, by motion filed in the probate court.

The probate court refused to reopen the estate, whereupon relators applied to respondent for appointment of a defendant ad litem. Respondent's denial of that application gave rise to the filing of the petition herein.

Relators contend that respondent is required to appoint a defendant ad litem by the language of § 537.021, RSMo Supp.1977, which is set forth here in relevant part:

"1. The existence of a cause of action for an injury to property, for a personal injury not resulting in death, or for wrongful death, which action survives the death of the wrongdoer or the person injured, or both,[1] shall authorize and require the appointment by a probate court of:

. . . (2) An executor or administrator of the estate of a wrongdoer upon the death of such wrongdoer, *unless a deceased wrongdoer leaves no assets subject to probate administration and is insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer*; then, a probate court shall not appoint an executor or administrator, but the court in which any

such cause of action is brought shall appoint a qualified person to be known as a defendant ad litem. The defendant ad litem shall serve and act as the named party defendant in such actions in the capacity of legal representative of the deceased wrongdoer." [Emphasis added.][2]

Relators argue that the underscored portions of the above quoted statute authorize the appointment of a defendant ad litem by the respondent because, at the time the application was made, the Nania estate had no assets subject to probate administration. This is true, argue relators, because the estate had been opened, the assets distributed, and the estate closed, all prior to the filing of the application.

Looking, as we must, to the plain meaning of the above quoted statute,[3] we see that the appointment of a defendant ad litem by the forum where the damage suit is brought occurs when two conditions exist: (1) the deceased wrongdoer *leaves* no assets subject to probate administration; and, (2) there is insurance coverage from which the damages may be recovered. The case before us fails the first test. Vincent Nania, Sr., *left* assets subject to probate administration, and over which probate jurisdiction was exercised. We do not perceive any way in which the statute can be read so as to equate the concept of a deceased's not leaving assets with the concept of a deceased's leaving assets which are subsequently distributed. Such notions are mutually exclusive. "It is our duty to determine the meaning of the statute from the words used by applying the plain and natural meaning of the language." *Bethel v. Sunlight Janitor Service*, 551 S.W.2d 616, 619 (Mo. banc 1977), citing *Laswell v. Industrial Commission of Missouri, etc.*, 534

1. No issue exists regarding the survival of relators' cause of action. Clearly, §§ 537.010 and 537.020, RSMo 1969, which were in effect at the time of Mr. Nania's death in 1974, authorize the survival of various types of actions, and respondent in effect concedes in the return that the underlying action falls within one of those classifications.

2. The language quoted was in effect at the time relators sought appointment of a defendant ad

litem in the circuit court and at the time the alternative writ of mandamus was issued. The statute has been amended, effective January 2, 1979, only to the extent it currently reads "a probate division of the circuit court" rather than "a probate court."

3. Enacted by the Seventy-Ninth General Assembly in 1977, § 537.021 became effective September 28, 1977.

S.W.2d 613, 616 (Mo.App.1976). The "plain and natural meaning of the language" in question here is perfectly clear: either Mr. Nania left assets or he did not. Relators admit that he did. Thus, assuming that § 537.021 had any applicability to the instant case,[4] it is clear that it imposed no duty upon respondent to appoint a defendant ad litem. Indeed, it would have been improper for him to have done so.

Accordingly, the alternative writ is quashed.

KELLY and STEWART, JJ., concur.

---

4. Because of the result reached, we need not determine the applicability of § 537.021 to a case involving an estate opened and closed prior to its enactment. Before that section came into existence the authorization for substitution of parties in actions which survived the death of the defendant was provided by §§ 537.010 and 537.020, RSMo 1969, subject to the provisions of § 507.100, RSMo 1969. *Cobble v. McDonald*, 313 S.W.2d 713, 715 (Mo. banc 1958). Of particular interest is subsection 1(3) of that statute which reads in relevant part:

"If the death occurs prior to final judgment or after final judgment and before appeal and substitution or motion therefor is not made within nine months after the first published notice of letters testamentary or of administration, the action shall be dismissed as to the deceased party; . . ."

The aforementioned statutes are to be read in conjunction with the probate code, *State ex rel. McCubbin v. Ginn*, 347 S.W.2d 119, 125 (Mo. banc 1961) (Storckman, J., concurring), including § 473.360, which imposes a six month limitation on revived actions, and § 473.363, which imposes a duty on the executor or administrator to advise the probate division of the circuit court of any actions pending against his decedent at the time of death and to advise all adverse parties in such actions of the fact of the death, inter alia, when the existence of such actions is known to the administrator or executor.