**Kathleen Ann MULHOLLAND, Appellant,**

v.

**SCHNEIDER SERVICE CO., INC., d/b/a Schneider Air Conditioning and Heating Service; John J. Mergenthaler, Sr., Appellees.**

**Kathleen Ann MULHOLLAND, Appellee,**

v.

**SCHNEIDER SERVICE CO., INC., d/b/a Schneider Air Conditioning and Heating Service; John J. Mergenthaler, Sr., Appellant.**

**Nos. 80–1796, 80–1831.**

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1981.

Decided Oct. 15, 1981.

---

Elmer C. Oberhellmann, Bruce Nangle, argued, St. Louis, Mo., for appellant Kathleen Ann Mulholland.

W. Munro Roberts, Jr., Ted L. Perryman, argued, St. Louis, Mo., for appellee Schneider Service Co., Inc.

Harold G. Johnson, argued, Johnson & Hayes, St. Ann, Mo., for appellant John J. Mergenthaler, Sr.

Before HENLEY and McMILLIAN, Circuit Judges, and COLLINSON,* Senior District Judge.

HENLEY, Circuit Judge.

In these consolidated appeals arising from a diversity action brought by Kathleen Ann Mulholland against Schneider Service Company, Inc. (Schneider) to recover for injuries sustained while she was a passenger in an automobile that collided with Schneider's parked truck, Mulholland appeals the order of the district court granting Schneider's motion for judgment in accordance with its motion for a directed verdict. In addition, John J. Mergenthaler, the father of the deceased driver of the automobile and guardian ad litem for his son's estate, which was impleaded by Schneider,[1] appeals the court's denial of his motion for an award of attorney's fees to the attorney hired by him to defend. We affirm the judgment of the district court (The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court, Eastern District of Missouri) in both cases.

The events leading to the accident began at about eight o'clock on the evening of January 19, 1977, when Mulholland and a friend, Carol Mayo, drove to Rusty Springs, a tavern located at Manchester and Kingshighway roads in the City of St. Louis, to

---

* The Honorable William R. Collinson, United States Senior District Judge, Western District of Missouri, sitting by designation.

1. On December 27, 1977 Mulholland and Mergenthaler executed a Covenant Not to Sue under which Mulholland agreed not to bring an action against the estate of John (Jack) Mergenthaler, Jr., in exchange for a $25,000.00 payment from the deceased's automobile liability insurance carrier.

pick up one of Mulholland's friends who was experiencing car trouble. Because it had been snowing heavily most of the day, driving conditions were poor, and the two women did not reach their destination until shortly after eleven o'clock. Since Mulholland's friend had left the tavern by the time they arrived, the women returned to Mulholland's car, which would not start. They went back inside the tavern where they met John (Jack) Mergenthaler, Jr., with whom Mulholland was acquainted, and two of his friends, Daniel Hasekamp and Mark Kaminski. After the women accepted Mergenthaler's offer to drive them home, the five people left Rusty Springs at about one o'clock on the morning of January 20. They proceeded south on Kingshighway to Highway 40 West. From Highway 40 they exited onto Interstate 270 (I-270), a three lane highway, where they proceeded north to the point of the accident on the shoulder of the Ladue Road exit ramp, where a service truck owned by Schneider had been parked the afternoon before when it became disabled.[2]

All of Mulholland's witnesses testified that Mergenthaler was driving at thirty-five miles per hour and did not appear intoxicated.[3] Their testimony concerning the location of the Mergenthaler vehicle immediately before the accident and of Schneider's parked truck, however, was conflicting. Mulholland testified that as the automobile was proceeding north on I-270, the driver moved from the center lane to the exit lane. She asserted that she saw half of Schneider's parked truck in the travel portion of the exit lane and shouted, "Look out!" According to her testimony, Mergenthaler then braked, and the car skidded sideways seventy feet into the rear of the truck.

Daniel Hasekamp testified that the skid started as the driver changed lanes from left to right and that the car skidded two hundred feet to the point of impact. At trial, he stated that the truck was in the travel portion of the exit lane. In a statement taken only thirty-six hours after the accident, however, he indicated that the truck was parked on the shoulder of the exit lane.

Carol Mayo testified that the skid toward the exit lane started when the driver changed from the center to the right lane. She estimated that the car skidded seventy to one hundred feet before the collision occurred. While Mayo testified at trial that Schneider's truck protruded four feet from the shoulder into the travel lane, she stated in her deposition that she did not know where the truck was parked in relation to the travel lane.

It is important to note that all of Mulholland's witnesses admitted that because the ground was covered with snow, they could not see lane markings or distinguish the travel portion of the exit lane from the shoulder.

Schneider's witnesses, two state highway patrolmen and employees who returned to the disabled truck to transfer some equipment to another truck, testified that the truck was parked on the shoulder with no part of it on the travel portion of the exit lane. Additionally, the highway patrolman who investigated the accident scene stated that skid marks from the Mergenthaler vehicle started in the lane nearest the center median and continued uninterrupted for five hundred feet to the point of collision.

At the conclusion of the evidence, the district court submitted the case to the jury, which failed to reach a verdict. After declaring a mistrial, the court granted Schneider's motion for judgment in accordance with its earlier motion for a directed verdict. See Fed.R.Civ.P. 50(b).

2. After the driver of the disabled truck informed his supervisor that he had parked it on the shoulder of the highway, Schneider called a tow truck to have the vehicle removed.

3. The investigating highway patrolman estimated the vehicle's speed at sixty miles per hour. In addition, the results of an analysis of blood alcohol content of the driver revealed that he was legally intoxicated. Although Mulholland argues on appeal that the results of the blood test were inadmissible, we need not reach this issue or the two remaining issues raised in her brief in light of our decision here.

On appeal, Mulholland argues that the conflicting testimony of the witnesses for both parties created a factual issue concerning the location of Schneider's parked truck that the jury, rather than the court, should have resolved. Thus, Mulholland asserts that the district court improperly granted Schneider's motion.

■ To determine the propriety of the district court's action, we must inquire whether the evidence was sufficient to create an issue of fact for the jury. *Kropp v. Ziebarth*, 601 F.2d 1348, 1352 (8th Cir. 1979). In answering this question, this court has stated that under both federal and Missouri law,

> [a] verdict is properly directed 'only when the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict.' [*Savage v. Christian Hospital Northwest*, 543 F.2d 44, 46 (8th Cir. 1976)], *quoting Meitz v. Garrison*, 413 F.2d 895, 896 (8th Cir. 1969). In reviewing the evidence, the District Court must view the evidence in the light most favorable to the nonmoving party and must give him the benefit of all inferences in his favor reasonably to be drawn from the evidence. *Kennedy v. U. S. Construction Co.*, 545 F.2d 81, 82 (8th Cir. 1976).

*Hladyshewski v. Robinson*, 557 F.2d 1251, 1252 (8th Cir. 1977); *see Kropp v. Ziebarth, supra*, 601 F.2d at 1352; *Parker v. Seaboard Coastline R.R.*, 573 F.2d 1004, 1007 (8th Cir. 1978). But if the evidence is such that reasonable persons could not differ as to the conclusion that the nonmovant has failed to meet its burden as to an element essential to its case, then it is the duty of the trial court to enter a directed verdict or judgment notwithstanding the verdict. *Dulin v. Circle F Industries, Inc.*, 558 F.2d 456, 465 (8th Cir. 1977). Thus, under these principles, it is clear that the trial court should sustain a motion for a directed verdict when there is no substantial evidence to support a contrary verdict, that is, when the nonmoving party has presented insufficient evidence to support a jury verdict in his favor. *See Hauser v. Equifax, Inc.*, 602 F.2d 811,

814 (8th Cir. 1979); *Rochester Civic Theatre, Inc. v. Ramsay*, 368 F.2d 748, 752 (8th Cir. 1966).

■ After carefully reviewing the evidence of record in the instant case, we conclude that the trial court correctly sustained Schneider's motion for judgment in accordance with its motion for a directed verdict. Mulholland's theory of negligence rested on the assertion that at least part of Schneider's abandoned truck was parked in the travel portion of the exit lane. Her witnesses not only disagreed with Schneider's witnesses on this question, but also disagreed with one another. Moreover, two of Mulholland's witnesses gave contradictory statements when queried at different times about the location of the truck. These inconsistent statements and the witnesses' admission that they could not distinguish lane markings or the edge of the travel portion of the exit lane from the shoulder indicate that the witnesses simply were not in a position to accurately observe the accident site either before or after the collision and that no weight can be given to portions of their testimony relevant here. In these circumstances, we cannot say that Mulholland adduced sufficient evidence to create a jury question on whether Schneider's truck was parked in the travel portion of the exit ramp. Accordingly, the judgment of the district court is affirmed.

We now briefly address the contention of John J. Mergenthaler that the trial court improperly denied his motion for attorney's fees.

After Schneider impleaded the estate of the deceased driver, the court appointed James E. Godfrey, attorney for Mergenthaler, Jr.'s insurer, as guardian ad litem of the estate. Mr. Godfrey also entered his appearance as attorney for the estate. On his subsequent motion, the court substituted the deceased's father as guardian ad litem. One week before trial, Harold G. Johnson also entered his appearance as attorney for Mergenthaler, Sr. Both attorneys actively participated in the examination of witnesses on the first day of trial. On the second day, however, Schneider requested that one

of the attorneys be excluded. After conferring with all the attorneys in the case, the court determined that only one attorney for the estate would be allowed to interrogate witnesses. Although Mr. Godfrey offered to defend the estate pursuant to his obligation under the deceased's insurance policy, only Mr. Johnson continued actively to participate in the trial.[4]

Relying on section 537.021 of the Missouri Revised Statutes, Mo.Rev.Stat. § 537.021.2 (Cum.Supp.1981), Mergenthaler now appeals the trial court's denial of his motion for $4,500.00 in attorney's fees for Mr. Johnson. Section 537.021 provides that a defendant ad litem[5] "may be allowed a reasonable fee by the court appointing him which shall be taxed as court costs." There is no support in this language or the cases construing the statute for Mergenthaler's contention that his attorney is entitled to fees. E. g., State ex rel. Gannon v. Gaertner, 592 S.W.2d 214 (Mo.App.1979); State ex rel. Yates v. Luten, 587 S.W.2d 295 (Mo. App.1979). The statute merely appears to provide for reimbursement of necessary out-of-pocket expenses by the legal representative of the deceased. Because we do not believe that section 537.021 authorizes an award of attorney's fees, we affirm the judgment of the district court in this matter.

Accordingly, the judgment of the district court is affirmed in both cases.

---

4. Mr. Godfrey, however, was allowed to sit at counsel table to confer with Mr. Johnson.

5. Under this section, a defendant ad litem is a nominal defendant appointed by the probate court. He serves merely as the legal representative of a deceased tortfeasor and has no personal interest in or liability for the litigation. State ex rel. Gannon v. Gaertner, 592 S.W.2d 214, 216 (Mo.App.1979).