**STATE of Missouri ex rel. F. William KASMANN, Relator,**

v.

**Honorable Gene HAMILTON, Respondent.**

**No. WD 38818.**

Missouri Court of Appeals, Western District.

April 21, 1987.

Rehearing Denied June 2, 1987.

Motion for Transfer to Supreme Court Denied June 2, 1987.

Application to Transfer Denied July 14, 1987.

Floyd R. Finch, Jr., Kansas City, for relator.

William H. Pickett, Michael L. Wilson, Kansas City, for respondent.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

### ORIGINAL PROCEEDING IN PROHIBITION

BERREY, Judge.

This is an action in prohibition brought by F. William Kasmann, (relator) the defendant ad litem for non-resident decedents, Claude Siebring, Owen Siebring and Grace Siebring, asserting the Circuit Court of Boone County, Missouri, lacks personal jurisdiction over the non-resident decedents and that his appointment as defendant ad litem was improper in the underlying cause, *Gary Ellebracht v. Orscheln Farm*

*& Home Supply, Inc., et al.,* pending below. We now make our preliminary writ order absolute.

Plaintiff, Gary Ellebracht in the pending suit alleges that on or about October 6, 1968,[1] he was injured as a result of an alleged defective and unreasonably dangerous condition of a machine known as Siebring Feed-O-Mat Bunk Feeder; that the Bunk Feeder was manufactured by the three decedents, named above, all d/b/a Siebring Manufacturing Co., a partnership; that on or prior to August 8, 1965, the partnership manufactured and placed the bunk feeder "into the stream of commerce": the partnership allegedly sold the feeder to Chief Industries of Nebraska, a wholesaler, who in turn sold it to Orscheln Farm & Home Supply Inc.; that the parents of plaintiff then purchased the feeder from Orscheln on August, 1965.

Procedurally, on November 22, 1982, plaintiff filed his petition against Orscheln Farm & Home Supply Company and discovery was undertaken. On September 5, 1984, plaintiff filed his first amended petition adding Chief Industries as a defendant and further discovery was made. On or about February 27, 1985, plaintiff moved for the court's order appointing F. William Kasmann, Public Administrator of Boone County, as defendant ad litem for Claude, Owen and Grace Siebring. Plaintiff alleged that Claude Siebring died on February 2, 1965; that Grace Siebring died on March 21, 1972; and that Owen Siebring died on December 22, 1974; and that "[t]he deceased tort feasors ... are insured by a policy of liability insurance issued by the Tri-State Insurance Company, Inc., of Laverne [sic], Minnesota." Plaintiff alleged the existence of a policy of liability insurance covering damages for wrongdoing justified the appointment of a defendant ad litem pursuant to § 537.021 RSMo Supp 1983, and that with the appointment of the resident defendant ad litem, the court's assertion of personal jurisdiction over the "personal representative" of the decedents was proper pursuant to Missouri's Long-Arm Statute, § 506.500 RSMo 1978. The trial court granted the plaintiff's motion and plaintiff amended his petition to include Kasmann as an additional defendant. Subsequently, the relator, Kasmann, as defendant ad litem, filed a Special Appearance to Contest Jurisdiction and Motion of Defendants Claude Siebring, Owen Siebring, and Grace Siebring to Dismiss Or, Alternately, for Summary Judgment on the basis of improper service and lack of personal jurisdiction over the deceased Siebrings and the impropriety of his appointment. The respondent Circuit Court overruled the relator's motion and ordered him to proceed with the cause on the merits. The relator filed this writ of prohibition in which this court issued our preliminary rule in prohibition.

The authority to appoint a defendant ad litem is set forth in § 537.021.1 which states, in part:

> The existence of a cause of action for an injury to property, for a personal injury not resulting in death, or for wrongful death, which action survives the death of the wrongdoer or the person injured, or both, shall authorize and require the appointment by a probate division of the circuit court of:
>
> \*    \*    \*    \*    \*    \*
>
> (2) A personal representative of the estate of a wrongdoer upon the death of such wrongdoer, *provided that, if a deceased wrongdoer was insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer,* then the court in which any such cause of action is brought shall appoint at the request of the plaintiff or other interested party a qualified person to be known as a defendant ad litem. The defendant ad litem when so appointed shall serve and act as the named party defendant in such actions in the capacity of legal representative of the deceased wrongdoer and such appointment and any proceed-

---

1. On this date plaintiff was approximately eight (8) years old. On October 9, 1981, plaintiff reached twenty-one (21) years of age. This ac-

tion was brought within the time allowed under § 516.170 RSMo 1978.

ings had or judgment rendered in such cause after such appointment shall be binding on the insurer of such deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of such deceased wrongdoer in such cause of action. Should the plaintiff in such cause of action desire to satisfy any portion of a judgment rendered thereon out of the assets of the estate of such deceased wrongdoer, such action shall be maintained against a personal representative appointed by the probate division of the circuit court and the plaintiff shall comply with the provisions of the probate code with respect to claims against decedents' estates. (emphasis added).

The relator, Kasmann challenges his appointment under this statutory section, among other things,[2] because plaintiff Ellebracht failed to establish the existence of an insurance policy insuring the partnership of Claude, Owen and Grace Siebring.

The predecessor statute which first permitted the appointment of a defendant ad litem was enacted in 1977 and before an appointment could be made, two conditions had to be met: (1) the deceased wrongdoer left no assets subject to probate administration; and (2) there was no insurance coverage from which the damages may be recovered.[3] *State ex rel. Yates v. Luten*, 587 S.W.2d 295, 296 (Mo.App.1979). In 1981, the legislature abolished the former condition of requiring that the deceased wrongdoer have no assets subject to probate administration. § 537.021.2. As seen above, § 537.021.1(1) only requires the deceased wrongdoer "was insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer...."

The court in *State ex rel. Gannon v. Gaertner*, 592 S.W.2d 214, 216 (Mo.App. 1980), stated "[t]he obvious legislative purpose of Sec. 537.021, which became effective in 1979, was to simplify [the] burdensome procedure of normal estate administration in cases where there was no probate estate and the liability insurer was the 'real defendant', and to substitute the so-called defendant ad litem for the formerly required administrator; the defendant ad litem is to serve as the named defendant in the capacity of the deceased's legal representative." The elimination of the deceased having no assets subject to probate administration as a prerequisite to an appointment of a defendant ad litem does not change this basic purpose: to provide a named party for the deceased wrongdoer so that a plaintiff may be redressed for his injury by the so called "real defendant"— the liability insurer.

It is upon this crucial element that plaintiff fails to present adequate proof; the plaintiff failed to establish the existence of the real defendant—the liability insurer, for the partnership of Claude, Owen and Grace Siebring. In support of his claim that the partnership was insured, he submitted a Daily Report and Declaration Sheet from the Tri-State Insurance Company of Luverne, Minnesota; however, no insurance policy was attached. The sheet listed the named insured as Owen Siebring, Grace Siebring and Barton Siebring, d/b/a Siebring Manufacturing.[4] The policy period was from April 29, 1967, to April 29, 1968. If the policy referred to in the Daily Report is a policy insuring against "loss" or "damage," the insurer is liable only for loss or damage, and not the negligent act, occurring within that period. *Hawkeye-Se-*

2. The relator takes issue with the retroactive application of this statutory section. At this time, we do not address this question and will assume arguendo that the statute has been properly applied.

3. The statute enacted in 1977 was amended in 1979 only changing references to probate court to "probate division of the circuit court." No substantive changes were made at that time.

4. The relator makes the argument that the partnership of Owen, Grace and *Barton* Siebring is a

different entity than the decedent defendants and could not be held liable for their alleged torts. The respondent asserts this was a continuous partnership and did not dissolve until after the pertinent time frame in issue citing to *Ellebracht v. Siebring*, 525 F.Supp. 113, 115 (W.D. Mo.1981); *aff'd mem.* 676 F.2d 706 (8th Cir. 1982). This issue does not need to be examined in light of the difficulties with the insurance policy time limits.

*curity Insurance v. Iowa National Mutual Insurance Co.*, 567 S.W.2d 719, 720 (Mo. App.1978). The plaintiff's damages did not occur until October 1968, some six months after the end of the policy period. Assuming the policy did provide coverage for "negligent acts," there would still be a lack of coverage as the partnership's negligence would have had to occur prior to August 1965, the date of purchase of the bunk feeder by plaintiff's parents.

The failure of plaintiff to produce adequate proof of liability coverage during the pertinent period makes the appointment of the defendant ad litem erroneous. Therefore, relator's appointment should be vacated and the petition dismissed. It is unnecessary to address the other points raised by the relator. The Preliminary Writ is made absolute.

All concur.