**Herbert F. CAUDILL, Appellant,**

v.

**FARMLAND INDUSTRIES,
INC., Appellee.**

**No. 90–1285WM.**

United States Court of Appeals,
Eighth Circuit.

Argued Oct. 8, 1990.

Decided Nov. 15, 1990.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1991.

Bert S. Braud, Kansas City, Mo. (Popham, Conway, Sweeney, Fremont & Bundschu, Kansas City, Mo., on the brief), for appellant.

*in the Courts,* 15 Wm. Mitchell L.Rev. 825, 871,    891 (1989).

Holly McCoy Zimmerman, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and BRIGHT, and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Herbert F. Caudill (Caudill) appeals from an order, entered February 12, 1990, in the Western District of Missouri, D. Brook Bartlett, *District Judge,* granting the motions of appellee Farmland Industries, Inc. (Farmland) for a directed verdict and judgment n.o.v., or, in the alternative, for a new trial.

Caudill commenced this action in 1986, alleging two causes of action: (1) that Farmland retaliated against Caudill in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1988), by causing a subsequent employer to terminate him; and (2) that Farmland tortiously interfered with Caudill's employment relationship with a subsequent employer. The jury returned a verdict in favor of Caudill on both causes of action. The district court then granted Farmland's motion for a directed verdict and judgment n.o.v.

On appeal, Caudill contends that the district court erred in granting Farmland's motion, asserting that the evidence was sufficient to support the jury's verdict. For the reasons set forth below, we affirm the judgment of the district court.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. Since this is an appeal from a directed verdict, we are required to view the evidence in the light most favorable to Caudill. *Brooks v. Woodline Motor Freight, Inc.,* 852 F.2d 1061, 1063 (8th Cir.1988).

After working in several jobs related to the grain and agricultural industry, Caudill came to Kansas City in 1982 as General Manager and Treasurer of the Kansas City

Terminal Elevator Company (Kansas City Terminal). While employed by Kansas City Terminal, Caudill was interviewed by Farmland, which was in the process of acquiring Kansas City Terminal through a Farmland subsidiary, FarMarCo. Ultimately, Farmland did not hire Caudill. After his termination from his position at Kansas City Terminal, Caudill filed his initial age discrimination charge against FarMarCo on May 2, 1985. The merits of that charge are not before us.

In July 1985, Caudill was hired by the Double Circle Farm Supply Company (Double Circle), another subsidiary of Farmland. Double Circle provided temporary managers to local cooperatives. Caudill was placed as an interim manager with Double Circle Coop in Waco, Texas (Waco Coop). Waco Coop is not a subsidiary of Farmland but is a member cooperative of Farmland. It purchases its products from Farmland. During the course of Caudill's term as interim manager of Waco Coop, he had some disagreements with his boss, Doyle Smith, concerning the purchase of feed. Smith wanted Caudill to buy Farmland products to sell to Waco Coop, although Caudill could buy the feed more cheaply elsewhere. Smith reminded Caudill on several occasions that Caudill was an employee of Farmland and that Farmland signed his paychecks.

During this period, Waco Coop had obtained financing from yet another Farmland subsidiary, the Cooperative Financial Association (CFA). CFA was the vehicle by which member coops, such as Waco Coop, could finance their businesses. In December 1985, Bill Moon, vice-president of CFA, wrote to Waco Coop, stating that CFA no longer would be able to provide financing because "a continuous difference of opinion of management and operational policies prevail between your Board and management personnel and individuals in Farmland assigned the responsibilities to assist you with management and operational support." At that time, Waco Coop had approximately $1,000,000 in outstanding debts to CFA. A meeting between Waco

* Of the Second Circuit, sitting by designation.

Coop and CFA was scheduled for January 1986 to discuss continued financing. By that time Waco Coop had hired Caudill as their manager, so that Caudill was working directly for Waco Coop rather than for Double Circle.

At a break in the January meeting, Caudill was approached by Harry Cleburg, a Farmland executive, who asked Caudill what his intentions were with respect to the pending age discrimination claim he had filed in 1985. Caudill stated that he was going forward with the claim. Following the Cleburg–Caudill discussion, Caudill was asked to leave the meeting. At that point, Cleburg advised the Waco Coop Board of Directors that unless there was "cooperation" between Caudill and CFA, CFA would not continue financing Waco Coop. Waco Coop obtained alternate financing from the M Bank. In February 1986, it repaid CFA the approximately $1 million in outstanding loans that it owed CFA. There remained only a $66,000 loan from CFA to Waco Coop. Caudill was retained as manager of the Waco Coop. From that point until July 1986, Caudill experienced no problems in his relationship with the Board of Directors of Waco Coop. There were no complaints at the June or July meetings of the board about his performance, and no mention of the possibility of terminating Caudill was made at those meetings.

On July 17, 1986, ten days before the regularly scheduled July meeting of the Waco Coop board, Caudill amended his age discrimination complaint to include a retaliation charge against Farmland. He alleged that Cleburg told the Waco Coop president that, unless Caudill was fired, Farmland would no longer finance Waco Coop. Caudill received a letter from the Equal Employment Opportunity Commission (EEOC), dated July 25, 1986, which stated that the retaliation amendment had been received by the EEOC and that "[a] copy of your charge or notice of your charge will be provided to the Respondent [Farmland] within ten days of the date your charge was received as required by law." The amendment bore an EEOC date-stamp of July 21, 1986.

On July 30, 1986, three days after the regular Waco Coop board meeting, the Waco Coop board held an emergency meeting at the Waco Holiday Inn. The minutes of that meeting show that a motion was made to terminate Caudill immediately and that the motion was unanimously approved. Two other employees—Jack Bird and Greg Caudill—also were terminated. Later that day, Caudill received a letter setting forth the reasons for his termination. These included his alleged failure to carry out the board's mandates with respect to expenditures; his alleged failure to explain discrepancies in financial reporting; and his alleged violation of Waco Coop's anti-nepotism policy. Caudill claimed at trial that the reasons set forth in the letter were pretextual.

On July 30, 1986, Caudill filed another retaliation claim against Farmland. He alleged that Farmland exercised influence over Waco Coop in having Caudill terminated. In his federal court complaint, Caudill added a claim for tortious interference with his business relationship with Waco Coop.

The claims for retaliation and tortious interference were tried to a jury on September 25–27, 1989. Farmland moved for a directed verdict at the close of Caudill's evidence and at the close of all the evidence. Judge Bartlett denied the first motion for a directed verdict and took the second under advisement. The case was submitted to the jury which found for Caudill on both causes of action. It awarded him $110,000 in damages. Judge Bartlett then granted Farmland's motions for a directed verdict and judgment n.o.v., or, in the alternative, Farmland's motion for a new trial. He concluded, in a ten-page written order dated February 9, 1990, that "there was insufficient evidence from which a reasonable jury could conclude that Farmland caused plaintiff's termination." Since we find that Judge Bartlett properly directed a verdict for Farmland and granted judgment n.o.v., we need not reach the question whether he properly granted, in the alternative, Farmland's motion for a new trial.

## II.

The standard for ruling upon a directed verdict and a judgment n.o.v. are the same. *See Simpson v. Skelly Oil Co.,* 371 F.2d 563, 567 (8th Cir.1967). Affirming the granting of such motions is appropriate where the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict. *Mulholland v. Schneider Service Co.,* 661 F.2d 708, 711 (8th Cir. 1981). The district court's conclusion here that there was insufficient evidence from which a reasonable jury could conclude that Farmland caused Caudill's termination is reviewed *de novo. Morgan v. Arkansas Gazette,* 897 F.2d 945, 948 (8th Cir.1990). In applying the *de novo* standard of review, we must:

"1) consider the evidence in the light most favorable to [Caudill], who prevailed with the jury; 2) assume all conflicts in the evidence were resolved by the jury in [Caudill's] favor; 3) assume as proved all facts which [Caudill's] evidence tends to prove; 4) give [Caudill] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) [reverse the granting of the motion] if reasonable persons could differ as to the conclusions to be drawn from it."

*Id.* (quoting *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985)).

Generally, only evidence favoring the non-moving party should be considered. *Dace v. ACF Indus.,* 722 F.2d 374, 376 (8th Cir.1983). As we stated in *Dace,* however, "[t]here may be particular situations in which the rule should not be rigidly applied. If, for example, the moving party's evidence is completely disinterested, uncontradicted, and unimpeached ... some modification of the general rule may be called for." *Id.* at 377. In the instant case, we have found it appropriate to consider, for example, the uncontradicted evidence relating to the diminished role that CFA played in financing Waco Coop between January and July of 1986.

Furthermore, while Caudill is entitled to the benefit of all reasonable inferences, he is "not entitled ... to the benefit of unreasonable inferences...." *Marcoux v. Van Wyck,* 572 F.2d 651, 653 (8th Cir.), *cert. dismissed,* 439 U.S. 801 (1978). Reasonable inferences are "inferences which may be drawn from the evidence *without resort to speculation." Hauser v. Equifax, Inc.,* 602 F.2d 811, 814 (8th Cir.1979) (emphasis added).

## III.

With the foregoing in mind, we turn first to Caudill's contention that the district court erred in finding that the evidence was insufficient to support a claim of retaliation under the ADEA, 29 U.S.C. § 623(d). As a threshold matter, we must determine whether an employee may sue a former employer for the actions of his present employer. The court below, following the weight of authority, held that Caudill could sue Farmland for his termination by Waco Coop. *Caudill v. Farmland Indus.,* 698 F.Supp. 1476, 1484–85 (W.D.Mo.1988) (ruling on Farmland's motion for summary judgment). For the reasons set forth by Judge Bartlett, we agree.

We agree further with Judge Bartlett, however, that the evidence adduced at trial did not support a finding that Farmland retaliated against Caudill by causing Waco Coop to terminate him. Caudill presented no evidence whatsoever that Farmland even contacted Waco Coop prior to Caudill's discharge, much less that Farmland encouraged or demanded the termination. *Cf. Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1532 (11th Cir.1990) (plaintiff introduced tape recording of present employer admitting that former employer had contacted him and urged him to fire Sherman).

The inference that Farmland caused the termination is unreasonable. The initial age discrimination claim was pending against Farmland's subsidiary at the time another Farmland subsidiary, Double Circle, *hired* Caudill. Caudill makes much of the fact that his termination was close in time to the addition of a new age discrimination claim against Farmland. Based on

that slender reed of evidence, however, it would be nothing but rank speculation to suggest that Farmland, which did not object to its own subsidiary hiring Caudill despite the pendency of the earlier discrimination claim, contributed in any way to the termination of Caudill by Waco Coop, a non-subsidiary.

Caudill's own evidence regarding the events of January 1986 further undercut his claim. Accepting as true Caudill's allegation that, in January, CFA put pressure on Waco Coop to fire Caudill *because of the pending discrimination claim* (a premise which, in itself, is dubious, in view of the difference of opinion regarding "operational policies" that the CFA had cited), the fact remains that Waco Coop resisted any such pressure and retained Caudill at a time when it owed CFA $1 million. When Caudill was fired, Waco Coop owed CFA only $66,000 and had obtained financing from the M Bank, so that CFA's potential leverage over Waco Coop was substantially diminished. Moreover, Caudill was not the only employee fired on July 30, making it even more speculative to infer that Caudill was the target of retaliation.

To accept Caudill's theory, the jury would have had to find that Farmland received notice of the new discrimination charge prior to the July 30 meeting and then had to speculate that Farmland contacted Waco Coop and pressured it to discharge Caudill prior to that meeting; that not only did Farmland attempt to assert influence over Waco Coop's decision but that it did assert such influence; and that this influence, rather than some other reason, *caused* Waco Coop to terminate Caudill. "We do not believe that a jury verdict based on such improbable conjecture can be permitted to stand." *Marcoux, supra,* 572 F.2d at 656.

IV.

We turn next to Caudill's claim that the district court erred in directing a verdict on his tortious interference claim. Under Missouri law, the "intentional interference by the defendant *inducing or causing a breach of the contract or rela-*tionship*"* is an essential element of a tortious interference claim. *Institutional Food Mktg. v. Golden State Strawberries, Inc.,* 747 F.2d 448, 453 (8th Cir.1984) (emphasis added). In view of Caudill's failure to establish that Farmland caused Waco Coop to terminate Caudill, his tortious interference claim, like his retaliation claim, lacks merit.

V.

To summarize:

We hold that there was insufficient evidence to support a finding that Farmland caused Waco Coop to terminate Caudill. Accordingly, the district court properly directed a verdict and granted judgment n.o.v. on Caudill's ADEA and tortious interference claims.

Affirmed.