Billy R. JOHNSON and Beverly A. Johnson, Appellants,

v.

COWELL STEEL STRUCTURES, INC., f/k/a B.C. Steel Co., Appellee.

No. 92–2940.

United States Court of Appeals, Eighth Circuit.

Submitted March 19, 1993.

Decided April 16, 1993.

David Maxwell Duree, St. Louis, MO, argued, for appellants.

Terrance Joseph Good, St. Louis, MO, argued (Terrance J. Good and Carolyn M. Kopsky, on the brief), for appellee.

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and KYLE,* District Judge.

KYLE, District Judge.

Appellants Billy R. Johnson and Beverly A. Johnson (the "Johnsons") appeal from the district court's[1] (1) entry of judgment as a matter of law in favor of appellee Cowell Steel Structures, Inc. ("Cowell") on their claim for punitive damages and (2) order denying their post-trial motion for a new trial on compensatory damages. We affirm.

## I. Background

From 1968 through 1988, the Johnsons operated Ace Novelty, a multi-faceted enterprise consisting of (1) vending machine routes, (2) a parts supply business for electronic games, (3) a business for repairing and servicing electronic vending machines, (4) a bingo supply business, (5) a cigarette supply business, and (6) a showroom/sales business for foosball tables, pinball machines, pool tables and jukeboxes.

In 1984, the Johnsons arranged to construct a single building from which they could operate Ace Novelty. The building that they constructed was composed of a structural steel frame and was enclosed in a metal skin. Cowell fabricated and supplied the steel members for the building's structural steel skeleton, including the welds joining the structural steel.

On December 14, 1987, certain welds connecting the structural steel frame of the building failed, causing the building to partially collapse. The Johnsons spent the next six months repairing the building. During that time, all of their businesses were either completely interrupted or interrupted to some degree. Eventually, the Johnsons were forced to sell the building and sell or terminate most of their business operations, except for the bingo supply business, which they currently operate from their home.

The Johnsons filed suit against Cowell, claiming that the building's collapse interrupted their business, thereby causing them to suffer economic losses. The Johnsons also sought punitive damages under Missouri law. Cowell admitted negligence and liability for compensatory damages, but contested the amount of those damages; it denied liability for punitive damages.

This action was tried before a jury. At the close of the plaintiff's case, and again at the close of all the evidence, Cowell moved for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(a), on the Johnsons' claim for punitive damages. The district court granted Cowell's motion, concluding that Cowell's actions in making and inspecting the welds did not rise to the level of conduct necessary to submit the Johnsons' punitive damages claim to the jury. T.Tr., at 314–15.

The jury awarded the Johnsons compensatory damages in the amount of $26,250. Thereafter, the Johnsons filed motions under Fed.R.Civ.P. 50 and 59 for a new trial on compensatory and punitive damages, and in the alternative, a motion for additur to increase the compensatory damage award from $26,250 to $35,529. The district court denied those motions.[2]

## II. Discussion

### A. Motion for New Trial on Compensatory Damages

■ A district court's order denying a motion for a new trial on the issue of damages will not be reversed absent a showing that the district court abused its discretion.[3] *Warren v. Fanning*, 950 F.2d

* The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Donald J. Stohr, United States District Court for the Eastern District of Missouri.

2. The Johnsons have not appealed the district court's order denying their alternative motion for additur.

3. Where a party who is dissatisfied with a jury's damage award has the district court review that award through a motion for new trial, a subsequent appeal of the damage award focuses our attention on the propriety of the district court's

1370, 1374 (8th Cir.1991) (quoting *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1274 (8th Cir.1987). The law of the forum state guides us when determining the adequacy of a jury's verdict. *Vanskike v. Union Pacific. R. Co.*, 725 F.2d 1146, 1150 (8th Cir.1984).

The Johnsons sought compensatory damages only for their economic losses. In support of their position, the Johnsons offered the expert testimony of Robert Seifert, a Certified Public Accountant experienced in performing business valuations and valuing economic loss to businesses from business interruption. Relying on a cash flow and income-based model, Seifert opined that the Johnsons' damages for economic loss were $323,680.

Cowell relied on the expert testimony of Certified Public Accountant Dennis Schowalter. At trial, Schowalter disputed Seifert's economic loss calculations and presented four different methodologies which he used to compute four alternative economic loss calculations applicable to the case at bar. The economic loss calculations under each methodology are as follows: (1) Methodology I: $43,523 loss; (2) Methodology II: $1,728 gain[4]; Methodology III: $70,000 loss; and Methodology IV: $29,455 loss. T.Tr. 275–81. Schowalter further testified that the average economic loss across all four methodologies was $35,524. *Id.* at 282.

The Johnsons contend that the district court erred in denying their motion for a new trial on the issue of compensatory damages, asserting that the jury's award of $26,250 was without any sound basis in

law or fact and was "shockingly inadequate."

■■ In Missouri, a new trial should be granted on the ground that a verdict is inadequate only if the verdict is against the weight of the evidence. *Gardner v. Reynolds*, 775 S.W.2d 173, 175 (Mo.Ct.App.1989). "When the trial court has overruled a motion for new trial alleging inadequacy of damages ..., the jury's exercise of its discretion is conclusive unless the verdict is so shockingly inadequate as to indicate that it is the result of passion and prejudice or a gross abuse of discretion." *Havel v. Diebler*, 836 S.W.2d 501, 504 (Mo.Ct.App.1992) (quoting *Leasure v. State Farm Mut. Ins. Co.*, 757 S.W.2d 638, 640 (Mo.Ct.App.1988). Absent proof that the verdict was "shockingly inadequate," we will not disturb the trial court's decision to deny the motion for new trial. *Vanskike*, 725 F.2d at 1150; *Leasure*, 757 S.W.2d at 640.

■ The Johnsons have not shown that the district court abused its discretion in denying their motion for a new trial on compensatory damages. First, they have not shown that the jury's damage award was against the weight of the evidence. Both parties introduced expert testimony concerning the losses incurred by the Johnsons as a direct result of Cowell's negligence; the testimony was received without substantive objection by either party.[5] In our view, the evidence introduced at trial provided the jury with a sufficient basis to award the Johnsons $26,250 in compensatory damages.[6]

Second, the Johnsons have not shown that the jury's award was "shockingly inadequate." Although the jury's award was

action, and not the jury's. *Stokes v. Georgia–Pacific Corp.*, 894 F.2d 764, 769 (5th Cir.1990).

4. In connection with Methodology II, Schowalter testified that due to the historical decline in Ace Novelty's profitability, the Johnsons' actual business losses for 1987 and 1988—$43,661—were approximately $1,700 less than the projected losses for the same period had the building not collapsed and interrupted the Johnsons' business. T.Tr., at 276–77.

5. In addition, the district court's instructions on damages were delivered to the jury without objection. T.Tr., at 317.

6. Although the parties were unable to explain, either in their briefs or at oral argument, how the jury arrived at its verdict, we note Seifert's testimony that the Johnsons earned $35,000 in post-depreciation income from their businesses. T.Tr., at 243. Given that the period between the building's collapse in December, 1987 and the sale of the business in September, 1988 was nine months—75% of a year—the fact that $26,250 is 75% of $35,000 may explain the manner in which the jury arrived at its verdict on compensatory damages.

on the low end of the damages range presented by the parties' experts, it was within the range of damages introduced into evidence and was well-above the lowest figure presented by Schowalter. Accordingly, the trial court's order denying the Johnsons' motion for a new trial on compensatory damages will be affirmed.

### B. Punitive Damages Claim

■ We review de novo a district court's entry of judgment as a matter of law under Fed.R.Civ.P. 50(a)(1), affirming if "the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." *Caudill v. Farmland Indus., Inc.*, 919 F.2d 83, 86 (8th Cir.1990).[7] Our review is limited to determining whether the Johnsons introduced evidence sufficient to create an issue of fact for the jury, that is, whether there was "substantial evidence" supporting a verdict in their favor on punitive damages. *Storhaug v. State Farm Fire & Cas. Co.*, 747 F.2d 443, 444 (8th Cir.1984). Like the district court, we must view the evidence in favor of the party that opposed the entry of judgment and give that party all reasonable inferences arising from the facts. *See Caudill*, 919 F.2d at 86.

■ The standard for awarding punitive damages is governed by state law. For over seventy years, Missouri law has recognized that, ordinarily, punitive damages are not recoverable in a negligence action, "because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct." *Reel v. Consolidated Inv. Co.*, 236 S.W. 43, 46 (Mo.1921); *see Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 436 (Mo. 1985). However, punitive damages may be recovered in a negligence action when the plaintiff presents evidence of sufficiently egregious conduct:

But an act or omission, though properly characterized as negligent, may manifest such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted. Or there may be conscious negligence tantamount to intentional wrongdoing, as where the person doing the act or failing to act must be conscious of his conduct, and, though having no specific intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. In either case punitive damages are allowable for resulting injury.

*Reel*, 236 S.W. at 46 (citations omitted), *cited in Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo.1973) (emphasis omitted). Conduct sufficient to support an award of punitive damages, therefore, must be "more flagrant in nature" than that sufficient to establish ordinary negligence, i.e., a breach of the duty to use reasonable care. *Stenson v. Laclede Gas Co.*, 553 S.W.2d 309, 316 (Mo.Ct.App.1977).

In *Hoover*, the Missouri Supreme Court set forth the preceding statement from *Reel* and held that punitive damages can be awarded in a negligence action on the basis of complete indifference to or conscious disregard for the safety of others, but only when the plaintiff shows that "the defendant knew or had reason to know that there was a *high degree of probability* that the action would *result in injury*." 700 S.W.2d at 436 (emphasis supplied). Punitive damages are appropriate in such a case because engaging in negligent acts or omissions in the face of such knowledge evidences complete indifference to or conscious disregard for the rights or safety of others. *Sharp*, 495 S.W.2d at 398.

■ The following evidence is offered by the Johnsons in support of their contention that the district court erred in dismissing their punitive damages claim. Robert

---

**7.** At issue in *Caudill* was a motion for "directed verdict" brought under Fed.R.Civ.P. 50(a). On December 1, 1991, the nomenclature for motions filed under Rule 50(a) was changed. However, the Advisory Committee's notes make clear that the standard for entering and reviewing motions for directed verdict continues to govern motions brought under the new nomenclature.

Cowell, Cowell's President, testified that he knew that it was important to public safety to have sound welds. T.Tr., at 127. Robert Cowell knew that once a steel member left Cowell's premises, no other inspections would be conducted on the welds. T.Tr., at 128. Cowell relied on a system of visual inspections, whereby each weld was examined by at least one, and usually two persons. *Id.* at 127, 138–39. Both Robert Cowell and the Johnsons' expert witness testified that a properly conducted visual inspection would reveal a rounded weld bead and that such a bead would indicate that the weld might be defective and should be inspected more closely. T.Tr., at 123, 130, 303–04. The welds in the Johnsons' structural steel had rounded beads. Robert Cowell conceded that the defective welds in the steel members installed in the Johnsons' building were not discovered during any visual inspection. T.Tr., at 129. Finally, the Johnsons' expert witness testified that the fact that the weld beads were rounded, but were not discovered, indicated to him that either no inspections were done, or that the inspection was performed by a person who knew nothing about welding. T.Tr., at 117.

 Having read the relevant portions of the transcript, we conclude that the evidence, even when viewed in the Johnsons' favor, supports only "one reasonable conclusion as to the verdict" on their claim for punitive damages: Cowell was negligent, but its negligence was not accompanied by substantial evidence supporting an award of punitive damages. Poor workmanship which does not create an immediate danger to the safety of others will not justify an award of punitive damages. *Hoover's Dairy*, 700 S.W.2d at 436. Robert Cowell's knowledge that sound welds were important to public safety would not support a jury determination that Cowell was conscious, from its "knowledge of the surrounding circumstances and existing conditions," that failing to discover the defective welds would create a high probability that the Johnsons would be injured. *See Reel*, 236 S.W. at 46. In addition, there is no evidence that Cowell knew or had reason to know that the welds were defective and did

nothing to discover and remedy the defect. *Stenson v. Laclede Gas Co.*, 553 S.W.2d 309, 316 (Mo.Ct.App.1977). In contrast, the evidence adduced at trial showed that Cowell inspected its welds, albeit negligently in this case.

In sum, the evidence introduced at trial would not permit a jury to conclude that Cowell's negligence showed a complete indifference to or conscious disregard for the safety of others. Accordingly, the district court's order granting Cowell judgment as a matter of law on the Johnsons' punitive damages claim will be affirmed.

### III. Conclusion

We affirm the entry of judgment as a matter of law in favor of Cowell on the Johnsons' claim for punitive damages and affirm the order denying the Johnsons a new trial on the issue of compensatory damages.