[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 13, 2012
JOHN LEY
CLERK

No. 11-11235
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cv-00105-RWS

BRENDA PEPPERS,

Plaintiff - Appellant,

versus

TRADITIONS GOLF CLUB,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 13, 2012)

Before TJOFLAT, EDMONDSON and BARKETT, Circuit Judges.

PER CURIAM:

Brenda Peppers, an African-American female, appeals from the district court's summary judgment in favor of Traditions of Braselton Golf Club ("Traditions"), a private golf facility located in Jefferson, Georgia, on her claim alleging retaliatory firing in violation of Title VII. Peppers argues that the district court erred in holding that she had failed to raise a genuine issue of fact as to whether her employer retaliated against her for filing a complaint alleging race discrimination with the Equal Employment Opportunity Commission.

## I.

A plaintiff may seek to prove that she was retaliated against in violation of Title VII by using either direct or circumstantial evidence. See Crawford v. Carroll, 529 F.3d 961, 975-76 (11th Cir. 2008). In this case, Peppers attempts to prove her claim by presenting circumstantial evidence of retaliatory employment action. Accordingly, Peppers must introduce sufficient evidence to raise a prima facie case of unlawful discrimination, and then must show that any legitimate justification offered by Traditions for her firing was pretextual. See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264-65 (11th Cir. 2010).

Peppers alleges that she was fired from her job in June, 2009, because she

had filed a complaint with the Equal Employment Opportunity Commission[1] ("EEOC") in which she claimed that she was temporarily laid off from her job as a server and bartender in November, 2008, because of her race.[2] Peppers was subsequently rehired at the start of the spring business season in March, 2009.[3] Traditions asserts that Peppers was fired in June, 2009, not because of her employment discrimination complaint, but because she was cited on five separate occasions within a six-week period for violations of company rules and because of complaints that she had provided poor service to customers.

Peppers attempts to show that Traditions' asserted justification for firing her was pretextual by using the same evidence that she relies upon in her prima facie case; therefore, we may assume that she has established a prima facie case of retaliation and consider her arguments at the pretext stage of the analysis. See id. at 1265 ("It matters not whether [the plaintiff] has made out a prima facie case if she cannot create a genuine issue of material fact as to whether [the defendant's]

---

[1] Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a).

[2] The EEOC completed its investigation of Peppers' race-discrimination complaint on March 13, 2009. The record does not reflect that any charges were brought by the EEOC on Peppers' claim.

[3] The only other employee who was laid off in November, 2008, was a Caucasian woman who also worked as a server. This employee was also rehired in March, 2009.

proferred reasons for firing her are pretext masking discrimination."). Peppers may show that Traditions' asserted justification is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Peppers argues that the five disciplinary citations that she received from other employees after being rehired in March, 2009, are indicative of pretext because, prior to filing her EEOC charge, she had never been disciplined for performance. However, the evidence at summary judgment showed that four of the five performance citations were written by employees who had no knowledge of Peppers' EEOC complaint, therefore, the fact that these employees issued citations does not show that they intended to retaliate against Peppers because of her complaint. Alternatively, Peppers argues that, even if these four citations were not issued in retaliation, they were used as a pretext to conceal the alleged retaliatory motive of General Manager Kevin Kriews, who knew of Peppers' EEOC charge and who was involved in the decision to terminate her. However, Peppers has proferred no evidence tending to show that Kriews did not rely in good faith on the employees' reports and on customer complaints about Peppers'

4

service.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (inquiring whether the employer believed that the employee had engaged in the relevant misconduct).[4]  Absent such evidence, there is no genuine issue of fact as to Kriews' motives in firing her.  See id. ("For an employer to prevail the jury . . . need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory. . . .") (internal quotation marks omitted).

Peppers also contends that Traditions' decision not to fire another server, Erica Campbell, provides sufficient evidence of pretext to survive summary judgment.  To qualify as circumstantial evidence of retaliation, "the quantity and quality of the comparator's misconduct must be nearly identical" to the plaintiff's misconduct.  McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal quotation marks and brackets omitted).  Here, the quantity of Campbell's misconduct is discrepant from Peppers' because Campbell was accused of a single incident of misconduct–becoming intoxicated while serving alcohol to

---

[4] Peppers insists that the district court erroneously required her to prove at summary judgment that Kriews did not believe the reports of her misconduct.  This argument is unfounded because the district court held that Peppers had "not presented evidence" that Kriews did not believe the reports, which is the appropriate standard at summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.").

5

customers–whereas Peppers was accused of five separate incidents of misconduct.[5]

Therefore, Traditions' response to Campbell's misconduct does not raise a

genuine issue of fact as to pretext. See Maniccia v. Brown, 171 F.3d 1364, 1369

(11th Cir. 1999) (finding evidence of disparate treatment inadequate where

plaintiff engaged in four incidents of misconduct compared to a single instance of

misconduct by proferred comparator).

Finally, Peppers argues that the temporal proximity between the filing of her

EEOC complaint in December, 2008, alleging race discrimination, and her firing

in June, 2009, constitutes evidence that she was fired because she had filed the

complaint.[6] However, we have held that a three-and-one-half-month delay

---

[5] Peppers also argues that, notwithstanding the greater frequency of her infractions, her treatment can be compared to Campbell's because, she contends, Campbell's conduct was more serious than Peppers'. However, both Peppers and Campbell were accused of "Critical Offenses" as defined by the Traditions Employee Handbook; therefore, there is no basis for Peppers' argument that Traditions classifies Campbell's misconduct as graver than Peppers'. Peppers also suggests that Campbell's drunkenness should be accorded more weight because some extreme forms of public drunkenness are criminal under Georgia law, see Ga. Code Ann. § 16-11-41, but there is no evidence in the record establishing that Campbell engaged in any of the drunken behavior that Georgia criminalizes, or that the State of Georgia took action against her arising from this incident, see id. (requiring that the defendant exhibited his drunkenness through "boisterousness, by indecent condition or act, or by vulgar, profane, loud, or unbecoming language . . . .").

[6] Peppers also insists that the time period for measuring temporal proximity should include only the period after she was rehired by Traditions in March, 2009. However, our case law measures the time period for the temporal proximity analysis from the time when the plaintiffs' protected conduct occurred, see, e.g., Higdon v. Jackson, 393 F.3d 1211, 1220-1221 (11th Cir. 2004); Wascura, 257 F.3d at 1244-45, and Peppers cites no authority indicating that a different rule applies in instances where the plaintiff is rehired after the filing of her employment complaint. Moreover, even if we were to measure from the date on which Peppers was rehired,

between protected conduct and adverse employment action is not sufficient when there is no other evidence of pretext. See Wascura v. City of S. Miami, 257 F.3d 1238, 1244-1245 (11th Cir. 2001). Accordingly, because no other evidence offered by Peppers weighs in favor of pretext, see supra, the six-month delay between Peppers' complaint and her firing at issue here does not independently create a triable issue of fact. See id. at 1245. Furthermore, although Peppers was fired as part of seasonal layoffs in November, 2008, she was rehired by Traditions in March, 2009, three months after she had filed her EEOC complaint. Traditions' decision to rehire Peppers during the pendency of her complaint further dispels any inference that the reasons for her firing in June were pretextual.[7] See Caudill v. Farmland Indus., Inc., 919 F.2d 83, 86-87 (8th Cir. 1990) (finding inference of

---

March 12, 2009, the resulting time period would still correspond to the period that we have held inadequate to establish evidence of pretext. See Higdon, 393F.3d at 1220-21 (holding three-month period insufficient). Similarly, we reject Peppers' argument that any action other than Peppers' filing of the EEOC complaint can be used to determine the length of the temporal proximity period here, because Peppers has not alleged that she was retaliated against for any action other than the filing of her complaint in December, 2008, and because Peppers raises this argument for the first time in her reply brief, see Maiz v. Virani, 253 F.3d 641, 674 (11th Cir. 2001) (declining to consider arguments raised for the first time in reply brief).

[7] Peppers' reply brief argues that she was rehired only in order to stave off the EEOC's investigation of her race-discrimination charge, but Peppers has presented no evidence of such elaborate plotting on the part of anyone employed by Traditions. Furthermore, we will not consider this argument, both because Peppers failed to present it to the district court, see Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 912 (11th Cir. 2007) ("As a general rule, an appellate court will not review a legal issue or theory not presented to the trial court . . . ."), and because she failed to raise it in her initial brief, see Maiz, 253 F.3d at 674.

retaliation unreasonable where a subsidiary of the defendant company hired the plaintiff employee during the pendency of his age-discrimination claim against the subsidiary).

The summary judgment in favor of Traditions is therefore **AFFIRMED**.