Daniel P. **BIERLE** and Karen
J. Bierle, Plaintiffs,

v.

**LIBERTY MUTUAL INSURANCE
COMPANY, Defendant.**

Civ. No. 91–5005.

United States District Court,
D. South Dakota, W.D.

April 30, 1992.

William G. Porter, Lonnie Braun, Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, S.D., for plaintiffs.

Arlo Sommervold, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, S.D., for defendant.

1. The prior designation under Fed.R.Civ.P. 50 of judgment notwithstanding the verdict was changed to judgment as a matter of law by amendment effective December 1, 1991. In all other respects, a motion for judgment as a matter of law is treated the same as the former motion for judgment notwithstanding the verdict.

**MEMORANDUM OPINION GRANTING
JUDGMENT AS A MATTER OF
LAW** [1]

BATTEY, District Judge.

## NATURE AND PROCEDURAL HISTORY

Plaintiffs Daniel P. Bierle and Karen J. Bierle brought an action against defendant Liberty Mutual Insurance Company alleging a claim of "bad faith" arising out of Liberty Mutual's handling of a personal injury claim of plaintiffs. Liberty Mutual was the underinsurance motorist carrier under its policy of insurance issued on an Avis Rent–A–Car leased and driven by Daniel P. Bierle.

This is a diversity action. Jurisdiction is based upon 28 U.S.C. § 1332.

The Court empaneled a jury on March 3, 1992. On March 9, 1992, the jury returned a verdict in the amount of $2,500 actual damage and $12,500 punitive damages for each plaintiff, for a total verdict of $30,000.

The jury considered evidence of the defendant's net worth of $2.6 billion in the assessment of its punitive damage awards. (Trial Exhibit 15). The question raised by defendant's motion goes to the issue of legal basis for damages and not the amount.

At the close of plaintiffs' evidence, defendant moved the Court for a judgment as a matter of law. The Court stated on the record it was considering granting defendant's motion, but decided to delay the motion to let the jury return its verdict. The Court reasoned it would then be in a position to consider the motion anew. The rationale behind utilizing such procedure was to promote judicial efficiency. Should the appellate court find a grant of such motion not supported by the evidence, it can simply reinstate the jury's verdict without the necessity of remanding for a new trial. This practice of reserving a decision

on a motion for judgment as a matter of law is sanctioned by the Eighth Circuit Court of Appeals. *See Morfeld v. Kehm,* 803 F.2d 1452, 1454 n. 2 (8th Cir.1986) and cases cited therein.

Upon reconsideration, defendant's motion for judgment as a matter of law as to punitive damages is granted.

### SUMMARY OF FACTS

#### A. Background facts

On March 18, 1987, a motor vehicle collision occurred on Highway 385 in Lawrence County, South Dakota. Daniel P. Bierle, the driver of the northbound vehicle, observed a southbound vehicle driven by Gary Hamilton approaching in the Bierle lane of travel. Daniel P. Bierle attempted to avoid the oncoming Hamilton vehicle by moving to the left in what would normally be the Hamilton lane of travel. Gary Hamilton was apparently asleep or at the very least inattentive. A few seconds before the collision he became attentive and drove his vehicle back into his lane of travel. The vehicles collided in the Hamilton lane of travel. Daniel P. Bierle and his passengers, wife Karen J. Bierle and Linda Newton, suffered personal injuries. The evidence indicated that the injuries were not serious. Medical expenses were less than $5,000 for all three persons.

#### B. Operative Facts as to the Claim of Bad Faith

The vehicle driven by Gary Hamilton was insured by an automobile liability policy issued by Dairyland Insurance Company with liability limits of $25,000 per person and $50,000 per accident. Dairyland Insurance Company was the primary insurance carrier on the Hamilton vehicle. As the underinsured carrier, Liberty Mutual would be liable to the extent of any damages in excess of the primary coverage. Thus the coverage of Liberty Mutual became secondary to that of the primary carrier, Dairyland. The underinsured coverage liability of the Liberty Mutual policy was $500,000. Initially the coverage was thought to be $300,000. The uncertainty over the issue of coverage and the amount of coverage gave rise to much correspondence between plaintiffs' counsel and the company, company and its counsel, and company interoffice memos.

The Bierles and Linda Newton engaged attorneys William Porter and Lonnie Braun of Rapid City to represent them in this bad faith action. They also represented plaintiffs in the underlying action against Hamilton.

On June 19, 1987, approximately three months following the motor vehicle collision, attorney Porter wrote to Liberty Mutual inquiring as to whether or not there was any uninsured or underinsured coverage. On July 28, 1987, in response to the inquiry, claim supervisor Julie Ann Herzog advised Bierles' counsel that "our policy shows that there is uninsured motorist coverage for Avis Rent–A–Car in the amount of $300,000; however, there is no underinsured motorist coverage." This was wrong. Ms. Herzog was unaware that at that time the law in South Dakota[2] required that there be underinsured motorist coverage for any motor vehicle registered or principally garaged within the state. Consequently, since the Hamilton vehicle carried liability limits of $500,000, under South Dakota law there actually was underinsured coverage of this amount.

On December 18, 1987, plaintiffs commenced a diversity action against Hamilton in this Court, Civ. No. 87–5140. The action

---

2. **58–11–9.4. Underinsured motorist coverage to be available with liability policies—Limitation of coverage—Exception.** No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured. Any policy insuring government owned vehicles may not be required to provide underinsured motorist coverage.

presumably would establish the liability issues arising out of the motor vehicle collision.

Once again seeking to explore coverage, plaintiffs' attorney, by letter addressed to defendant's attorney, Tom Fritz, requested a copy of the insurance policy on the rental car for examination. On July 29, 1988, the request was passed on to Greg Jeans, insurance claims supervisor of the defendant company.

On the same day, plaintiffs' counsel wrote to Laurie Kolquist, senior claims adjuster of defendant company, with the request, "Please send us a copy of that policy. We have requested that Mr. Fritz send us a copy of this policy, however, we have not received it as yet. It would be greatly appreciated if you could also send us a copy of the policy so we are aware of precisely how much coverage is available."

On August 17, 1988, Greg Jeans again advised that there was no underinsured motorist coverage, but $300,000 uninsured motorist coverage. Pursuant to another demand for the policy of August 28, 1988, Greg Jeans forwarded the declaration sheet on September 2, 1988, indicating, "I feel the attached declaration sheet should suffice to the coverage we have for Avis Rent–A–Car." The declaration sheet indicated that there was $500,000 liability insurance and contained a reference to uninsured motorist insurance, but no reference to underinsured motorist insurance. Upon receipt of the declaration sheet, plaintiffs' counsel on September 9, 1988, again wrote to Jeans, stating, "We want the insurance policy in effect for which our client was insured" and advised that the declaration sheet was inadequate. Greg Jeans forwarded the policy to plaintiffs' counsel on September 14, 1988. Based upon the policy submitted, plaintiffs' counsel advised Greg

Jeans on October 25, 1988, that in counsel's opinion, pursuant to the policy, Liberty Mutual provided at least $300,000 in underinsured motorist coverage applicable to the claims of Mr. and Mrs. Bierle. It was now ten months since the action had been filed.

Liberty Mutual continued to question internally whether there was coverage for underinsured motorist. It consulted with South Dakota lawyer Tom Fritz regarding South Dakota law on the question. On November 8, 1988, attorney Fritz advised that South Dakota law required both uninsured and underinsured coverage. A copy of the statute was forwarded to the company for verification. On November 8, 1988, defendant's attorney Fritz forwarded a copy of SDCL 58–11–9.4.

The company then raised the further question as to whether or not the Avis Rent–A–Car in question was considered as "registered or principally garaged" in South Dakota so as to come within applicable provisions of SDCL 58–11–9.4.

On November 28, 1988, the company finally concluded that the company was required to provide underinsured motorist coverage for the Avis business auto policy.

The court set the trial for April 10, 1989. An interoffice memo of Liberty Mutual on February 27, 1989, indicated "that liability was clear." A $50,000 reserve had been established and $25,000 offered for settlement.

Negotiations continued toward settlement. Plaintiffs' and Linda Newton's demand was for $438,500 for all three claims: $50,200 for Karen Bierle; $65,800 for Linda Newton; and $322,500 for Daniel P. Bierle. The company requested $50,000 authority to settle prior to trial. Defendant offered $59,500 on February 24, 1989, to settle plaintiffs' claims. On April 20, 1989, a structured settlement[3] was offered

---

**3.** Dairyland and Liberty make structured settlement offers (present value $75,000):

Dan & Karen Bierle

(1)  $ 50,000 up front
       948 per month for life commencing at age 55

Total $163,730 guaranteed
     $309,714 anticipated

(2)  $ 50,000 up front

     103,765 at age 55
Total $153,765

(3)  $ 25,000 up front
     15,000 in five years
     25,000 in ten years
     35,000 in fifteen years
     55,000 in twenty years
     98,000 in twenty-five years
Total $253,000

to plaintiffs by Dairyland and Liberty Mutual (present value $75,000) which would provide substantial payments at various times over a period of up to twenty-five years. Plaintiffs rejected this offer. The April 10, 1989, trial date had been continued indefinitely by mutual consent. It was continued because it was thought that additional medical examination and possible disc surgery might be needed for a cervical disc problem of Daniel P. Bierle. Plaintiffs conceded at trial that Liberty Mutual committed no bad faith during the period of this delay. The extent of the delay was approximately one year. In December of 1989 it finally was concluded that Daniel P. Bierle would not need further surgery. On January 15, 1990, Liberty Mutual requested an updated medical report. The updated medical report was forwarded to Liberty Mutual in April 1990. Discovery was reopened and a discovery deadline of September 1, 1990, was set. On September 26, 1990, the case was set for trial before the Honorable Andrew W. Bogue to commence January 7, 1991.

Settlement negotiations had resumed. On July 24, 1990, plaintiffs' demand was for $230,000. Settlement negotiations continued for all three claims. Negotiations continued through the fall of 1990.

The primary carrier Dairyland offered its policy limits of $50,000 for all three claims on November 1, 1990. The offer was accepted and Dairyland was released. This left for determination the liability of Liberty Mutual as the underinsured carrier. The issues of negligence, contributory negligence, comparative negligence, and contribution as between Daniel P. Bierle and Gary Hamilton still were undetermined.

The evidence established the sequence of the final stages of settlement negotiations as follows:

| | | | |
|---|---|---|---|
| Dan and Karen Bierle | Demands | 07/24/90 | $230,000 |
| Dan and Karen Bierle and Linda Newton | Demands | 10/01/90 | $250,000 |
| Liberty Mutual | Offers | 12/04/90 | $ 75,000 (all three claims) |
| Dan and Karen Bierle and Linda Newton | Demands | 12/07/90 | $270,000 |
| Linda Newton | Settles | 12/18/90 | $ 15,000 |
| Liberty Mutual | Offers (for plaintiffs) | 12/19/90 | $ 50,000 |
| Dan and Karen Bierle | Demands | 01/03/90 | $195,000 |
| Liberty Mutual | Offers | 01/03/90 | Structured settlement [4] |

With the impending trial date of January 7, 1991, Liberty Mutual hired attorney Robert Hofer in December 1990 to represent Liberty Mutual's interest as the underinsured carrier. Attorney Tom Fritz had withdrawn. Attorney Hofer raised the issue of presenting a contributory negligence defense to plaintiff's claim. Negotiations for settlement continued and on the morning of the trial the case was settled for $150,000. That was the first time that plaintiffs had agreed to settle for such sum. Payment followed by the mailing of the $150,000

(4)  $ 25,000 up front
      8,500 in one year
     11,500 in four years
     17,500 in nine years
     30,000 in fourteen years
     40,000 in nineteen years
     76,200 in twenty-four years
Total $208,700

4. Liberty makes structured settlement offer:
    $ 68,000 up front
      15,000 in five years
      25,000 in ten years
      35,000 in fifteen years
      55,000 in twenty years
      98,000 in twenty-five years
    $296,000 total (in addition to $30,000 received from Dairyland)

check on January 24, 1991. The bad faith claim was commenced on that date.

## DECISION

In resolving a motion for judgment as a matter of law, the Court should review the evidence in the light most favorable to sustaining the jury's findings, giving plaintiffs the benefit of every reasonable inference to be drawn from the evidence. *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.,* 745 F.2d 1188, 1192 (8th Cir.1984). For an order entering judgment as a matter of law to be proper, all the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party. *Brown v. Syntex Lab., Inc.,* 755 F.2d 668, 671 (8th Cir.1985); *see also Brosnahan v. Western Air Lines, Inc.,* 892 F.2d 730 (8th Cir.1989). The trial court may not usurp the function of the jury in weighing the evidence and the credibility of the witnesses. *McGee v. South Pemiscot School Dist. R-V,* 712 F.2d 339, 344 (8th Cir.1983). Accordingly, in deciding whether or not to grant a judgment as a matter of law, the Court must (1) consider the evidence in the light most favorable to plaintiffs Daniel P. Bierle and Karen J. Bierle; (2) assume that all conflicts in the evidence were resolved by the jury in their favor; (3) assume as proved all facts which plaintiffs' evidence tends to prove; (4) give plaintiffs benefit of all favorable inferences which may be reasonably drawn from the facts proved; and (5) to deny the motion if reasonable persons could differ as to the conclusions to be drawn from it. *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985). Upon review of the evidence in this case, including, but not necessarily limited to the summary of facts set forth herein, the Court is of the firm opinion that defendant's motion for judgment as a matter of law should have been granted. Plaintiffs have failed to establish punitive damages according to the standard required by the law of the state of South Dakota.[5]

## SOUTH DAKOTA STATUTORY LAW

SDCL 21-1-4 relating to the general rule on damages provides as follows:

> **21-1-4. Exemplary or penal damages only as provided—interest on damages.** The general remedy for damages does not include exemplary or penal damages nor "interest on any damages unless expressly provided by statute.

As respects punitive damages, SDCL 21-3-2 provides as follows:

> **21-3-2. Punitive damages in discretion of jury.** In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, ... the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

It is generally accepted in South Dakota that a bad faith claim against an insurance company by the insured consisting as it does of an intentional tort, could, in the appropriate case, provide for punitive damages recovery. *Stoner v. State Farm Mut. Auto. Ins. Co.,* 780 F.2d 1414 (8th Cir.1986), *appeal after remand,* 856 F.2d 1195 (1988). South Dakota follows a high standard requiring the showing of malice.

It has been said, "South Dakota requires more egregious conduct than states which merely require proof of gross negligence and states which require proof of conduct more egregious than gross negligence, but which do not require proof of malice. Thus, South Dakota is among the states having the most stringent conduct requirement." *See* Richard L. Blatt, Robert W. Hammesfahr, and Lori S. Nugent, *Punitive Damages, A State by State Guide to Law and Practice* (West Pub.1991).

In *Yankton Prod. Credit Ass'n v. Jensen,* 416 N.W.2d 860, 863 (S.D.1987), the court said, "[U]nder South Dakota law, one seeking punitive damages must show malice on the part of the party from whom damages are sought." SDCL 21-1-4.1 and SDCL 21-3-2 (citing cases). SDCL 21-1-4.1 reflects legislative intent that punitive

---

5. This being a diversity case, the Court must apply the law of the state of South Dakota. *Erie*

*R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, (1938).

damages be awarded only for willful, wanton, or malicious conduct on the part of the party claimed against.[6] The South Dakota Supreme Court in *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D.1991), provides:

> Malice is an essential element of a claim for punitive damages, however, malice sufficient to support exemplary damages may be either actual, malice in fact, or presumed, legal malice. Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will toward that person.... Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts. *Hannahs v. Noah*, 83 S.D. 296, 303, 158 N.W.2d 678, 682 (1968).... Thus, while the person may not act out of hatred or ill-will, malice may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other. *Id.* In this context, however, we have said:
>
>> Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations.

The court construed SDCL 21–1–4.1 and 21–3–2 together, stating "we equate the 'willful, wanton' language of the former with the presumed, legal malice of the latter, and the 'malicious' language of the former with the actual malice of the latter." *Dahl*, 474 N.W.2d at 900.

Bearing in mind that insurance bad faith is based upon intentional, malicious conduct, the Court is of the opinion that plaintiffs have not produced evidence warranting recovery under South Dakota law.

Plaintiffs asserted that Liberty Mutual committed bad faith in the following respects:

1) Committing deceit as to and misrepresenting the coverage available as to the Plaintiffs;
2) Failing and refusing to appropriately investigate the claims of plaintiffs and failing and refusing to negotiate in good faith with its insureds at appropriate times;
3) Subjecting Plaintiffs unnecessarily to the expenses, rigors and trauma of trial;
4) Delaying, to their insureds prejudice, retention of counsel to appropriately advise Defendant of the rights of its insureds;
5) Delaying, interfering with, and unnecessarily complicating Plaintiffs' efforts to settle their claims against the liability carriers;
6) Delaying unnecessarily the tender of settlement proceeds which Defendant agreed to pay expeditiously.

(Court Document 11).

In examination of the evidence with respect to the bad faith claims, the Court is unable to find evidence viewed in the light most favorable to plaintiffs to support such claims. The initial mistake as to the existence of coverage as required by South Dakota law was wrong. It was a mistake which took some time to remedy. It was, however, remedied.

Nowhere in the evidence does it reasonably appear that Liberty Mutual failed to negotiate in good faith. Liberty Mutual was not the primary carrier. Its settlement negotiations were somewhat hampered by the resolution of the issues of liability and damages between Dairyland's insured Hamilton and plaintiffs. Regardless of what may have appeared on its face to be the clear liability of Hamilton for the injuries sustained by plaintiffs, such liability had not been judicially determined.

Liberty Mutual was entitled to have those issues resolved under the adversarial

6. **SDCL 21–1–4.1. Discovery and trial of exemplary damage claims.** In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the Court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been a willful, wanton, or malicious conduct on the part of the party claimed against.

system. This does not appear to be an exceptional case under which the mere assertion of such right would constitute bad faith. It had the right to explore the facts as to plaintiffs' contributory negligence and the applicability of other defenses alleged. The fact that the company chose to exercise its rights in December of 1990 in the face of what appeared to be a failure of settlement negotiations can hardly be considered a malicious act as is required in a bad faith case. Plaintiffs' demand for settlement was much higher than defendant's offer.

The claim that Liberty Mutual was "subjecting Plaintiffs unnecessarily to the expenses, rigors and trauma of trial" is not supported by the evidence. Whatever expenses incurred were paid. The phrase "rigors and trauma of trial" escapes precise definition. At any rate, there was a paucity of evidence submitted on this issue.

The retention of attorney Robert Hofer in December of 1990 to represent defendant at the pending trial did not constitute malicious conduct. At that time settlement negotiations had broken down. The parties were a long way apart. While it may have been imprudent to bring an attorney in at the last minute to try the case, the facts of the liability and damages were not so complicated or attenuated that experienced trial counsel could not step in and try the case. Again, while it may be unwise for the insurance company, it cannot be classified as malicious conduct warranting the application of punitive damages under South Dakota law.

The Court has set forth in detail the facts and circumstances surrounding the attempts to settle this case. The claim that Liberty Mutual was maliciously delaying, interfering with, and unnecessarily complicating plaintiffs' efforts to settle is simply not shown by the evidence.

Finally, plaintiffs' claim that Liberty Mutual unnecessarily delayed tender of the final settlement figure of $150,000 which was agreed to be paid expeditiously constituted bad faith is patently frivolous. The delay was about thirty days.

The Court thus concludes that plaintiffs have failed to establish a punitive damage claim for bad faith. There has been no evidence produced which supports a jury finding of either actual or implied malice. The facts surrounding the negotiations between the parties show that negotiations were ongoing. The fact that they did not conclude earlier or in an amount satisfactory to plaintiffs does not make out a bad faith claim for punitive damages.

The Court's order granting defendant's motion for judgment as a matter of law dismissing the jury award of $25,000 punitive damages shall issue forthwith.