Daniel P. BIERLE; Karen
J. Bierle, Appellants,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, Appellee.

No. 92–2256.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1993.

Decided May 17, 1993.

874

William G. Porter, Rapid City, SD, argued (Lonnie R. Braun, on the brief), for appellants.

James E. Moore, Sioux Falls, SD, argued (Arlo Sommervold, on the brief), for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Daniel and Karen Bierle, husband and wife, were awarded $5000 in actual damages and $25,000 in punitive damages after a jury in this diversity action found in their favor on their claims of bad faith against Liberty Mutual Insurance Company. The District Court[1] granted Liberty Mutual's motion for judgment as a matter of law on the portion of the jury verdict awarding the Bierles punitive damages. *Bierle v. Liberty Mut. Ins. Co.,* 792 F.Supp. 687 (D.S.D.1992). The Bierles appeal the court's action on the punitive damages award, and also, for the first time in any court, they ask for a new trial. We affirm.

The facts of this case are set forth in some detail in the District Court's opinion. We will highlight them here as necessary to our discussion.

Daniel and Karen Bierle, residents of Texas, along with Linda Newton, were injured on March 18, 1987, in Lawrence County, South Dakota, when the rental car Daniel Bierle was driving collided with a car driven by Gary Hamilton. No one was seriously injured in the accident and only Daniel Bierle was hospitalized; his medical expenses eventually totalled less than $5000. Hamilton's liability insurance provided maximum coverage of $25,000 per person, $50,000 per accident. The Bierles were driving an Avis Rent-A-Car, and had elected to purchase the optional insurance coverage offered by Avis when they leased the car from an Avis location in South Dakota.

The Bierles, alleging claims exceeding Hamilton's limits of liability, contacted Liberty Mutual, the insurer for Avis, seeking information on underinsured motorist coverage.[2] The Bierles' counsel made the first request of Liberty Mutual for information on underinsured coverage on June 19, 1987, but he did not ask for a copy of the policy. On July 28, 1987, a Liberty Mutual claim supervisor responded that, although Avis carried $300,000 in uninsured motorist coverage, there was no underinsured coverage. The employee stated in her correspondence to the Bierles' counsel that the delay in responding[3] was necessitated by her efforts to have the policy pulled so that she could accurately answer the coverage question. Apparently, however, the claim supervisor did not look at the policy and she obviously was unfamiliar with South Dakota insurance law, or she would have known that there was in fact underinsured motorist coverage.[4] There was

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

2. Underinsured motorist coverage allows the insured to "collect the amount of that insured's own coverage less the amount of the tortfeasor's liability coverage." 7 Patrick D. Kelly, *Blashfield Automobile Law and Practice* § 315.1, at 534 (rev. 3d ed. 1987).

3. There was evidence at trial that it is Liberty Mutual's policy, and is considered good policy in the insurance industry, to respond to coverage inquiries within 48 hours.

4. Under South Dakota law in effect at the time of the accident, motor vehicle liability insurance carriers were required to provide underinsured motorist coverage with automobile liability insurance policies sold in the state, with an exception for government-owned vehicles. S.D. Codified Laws Ann. § 58–11–9.4 (Supp.1987). There was testimony from witnesses for both parties that competent counsel thus would have known that the Bierles had underinsured coverage simply by knowing that the Bierles carried liability insurance, and could have determined the amount of such coverage using only the declaration sheets.

no evidence that she intentionally misled the Bierles about the coverage.

It was not until a year later, in July 1988, that counsel for the Bierles wrote Liberty Mutual to inquire further about coverage and, for the first time, to ask for a copy of the policy. In July and August, counsel for the Bierles contacted Thomas Fritz, an attorney Liberty Mutual retained to represent Daniel Bierle in any third party action Hamilton might have against him, and asked Fritz to get the Bierles a copy of the Avis policy. Fritz asked Liberty Mutual, without result, to release a copy of the policy to the Bierles. Liberty Mutual continued to deny coverage, while the Bierles continued to request a copy of the policy. In early September, Liberty Mutual sent the Bierles a copy of the declarations sheet, which is a summary of the policy, that did not mention underinsured coverage. The Bierles did not receive a copy of the policy until later in September, just under two months after they made the first request.

Once the Bierles confirmed coverage, they began making demands of Liberty Mutual for compensation for their allegations of physical and emotional injury, loss of consortium, and lost earnings arising out of the accident. Settlement negotiations thus began and continued off and on through 1989 and 1990.[5] Efforts did not begin in earnest until January 1991, on the eve of the scheduled trial of the Bierles' underlying claims against Liberty Mutual for compensation for their alleged injuries caused by the accident.[6] By then, Liberty Mutual had long ago acknowledged that the Bierles had underinsured motorist coverage, but the company had some questions about Daniel Bierle's negligence in causing the accident (the accident actually took place in Hamilton's lane, where Bierle had swerved to avoid Hamilton and where Hamilton had returned just before the collision), and, internally, even about

the amounts of coverage. Moreover, the extent of Daniel Bierle's injuries and his future medical expenses, including the degree of permanent disability, were not ascertainable until Liberty Mutual was advised in April 1990 of Bierle's medical status and that he would not require surgery. As several witnesses acknowledged, settlement negotiations would have been futile if they had taken place before Daniel Bierle's scheduled surgery, which was cancelled in December 1989. Further, Bierle's treating physician admitted that he was unable to determine whether the pathology he observed and the pain Bierle allegedly was experiencing were the result of normal aging or the accident.

The Bierles' underlying claim against Liberty Mutual for the accident was settled before trial for $150,000. The release executed by the parties expressly reserved to the Bierles the right to pursue their bad faith claim. Before they even signed the release they filed the present action in the District Court, invoking the court's diversity jurisdiction, alleging malicious bad faith and seeking both compensatory and punitive damages. The jury awarded $5000 actual damages to the couple on their bad faith claim, and $25,000 in punitive damages.

Liberty Mutual moved for judgment as a matter of law at the close of the Bierles' presentation of their case. The District Court denied the motion but announced it would entertain such a motion anew when the jury reached a verdict. After the jury returned its verdict in favor of the Bierles on actual and punitive damages, the court granted Liberty Mutual's renewed motion for judgment as a matter of law, that motion limited on renewal to the award of punitive damages. See Fed.R.Civ.P. 50. The Bierles appeal.

We first dispose of the Bierles' argument that we should reinstate the punitive damages award.[7] We decline to do so. We have

5. For details of those offers and counteroffers, see Bierle v. Liberty Mutual Insurance Co., 792 F.Supp. 687, 689–90 (D.S.D.1992).

6. By this time, Dairyland Insurance Company, Hamilton's insurance carrier and the primary insurer on the Bierles' claims, had paid its maximum coverage of $50,000 toward the claims of the Bierles and Linda Newton.

7. Formerly called "directed verdict" or "judgment notwithstanding the verdict" (j.n.o.v.), the change in nomenclature to "judgment as a matter of law" did not change the standard for granting a Rule 50 motion or the standard governing review of the same. See Fed.R.Civ.P. 50 advisory committee's note (1991 amendment, subdivision (a)). We will reverse only if we de-

conducted a thorough review of the record and agree with the careful opinion of the District Court. *See Bierle*, 792 F.Supp. at 691–93.

■■■ Under South Dakota law, an award of punitive damages must result from a finding of malice, either actual or presumed, on the part of the tortfeasor. *See Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D.1991). The Bierles contend that, while the evidence may not demonstrate an intent motivated by hatred or ill-will on Liberty Mutual's part to injure the Bierles (actual malice), there was sufficient evidence to support an inference that Liberty Mutual "act[ed] willfully or wantonly to the injury of" the Bierles (presumed malice). *Id.* To be willful or wanton, Liberty Mutual must have "consciously realized that [its] conduct would in all probability, as distinguished from possibility" harm the Bierles. *Flockhart v. Wyant*, 467 N.W.2d 473, 478 (S.D.1991) (quoting *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D.1984)) (emphasis omitted). Although the record shows that Liberty Mutual was guilty in this instance of sloppy business practice and that it made errors in handling the Bierles' requests for information about their underinsured motorist coverage, we agree with the District Court that Liberty Mutual's behavior was not willful or wanton, either when it initially denied coverage or later during negotiations on the extent to which Liberty Mutual would be liable to the Bierles.

The Bierles' brief raises seven additional issues that, they contend, entitle them to a new trial. Liberty Mutual, by motion that we have taken with the case, argues that we have no jurisdiction to consider these issues because the Bierles failed to move for a new trial in the District Court, and thus the issues are not preserved for appellate review.

The Bierles ask us to consider their arguments for a new trial notwithstanding their failure to seek a new trial in the District Court. Federal Rule of Civil Procedure 50(c)(2) permits "[t]he party against whom judgment as a matter of law has been ren-

dered" to serve a motion for a new trial within ten days after the court enters judgment, but the rule does not indicate that such a motion is mandatory before asking for a new trial on appeal. The Supreme Court, however, has said that "if the plaintiff's verdict is set aside by the trial court on defendant's motion for judgment *n.o.v.* [now judgment as a matter of law], plaintiff may bring these very grounds [for new trial] directly to the court of appeals without moving for a new trial in the district court." *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 328, 87 S.Ct. 1072, 1080, 18 L.Ed.2d 75 (1967). The Court quoted the Advisory Committee note to Rule 50(c)(2):

> Even if the verdict-winner makes no motion for a new trial, he is entitled upon his appeal from the judgment n.o.v. not only to urge that that judgment should be reversed and judgment entered upon the verdict, but that errors were committed during the trial which at the least entitle him to a new trial.

*Id.* at 328 n. 6, 87 S.Ct. at 1080 n. 6 (quoting Fed.R.Civ.P. 50 advisory committee's note (1963 amendment, subdivision (c)(2))).

The matter is complicated here, and our review is narrowed considerably, because Liberty Mutual did not renew its Rule 50 motion on the issue of bad faith liability and actual damages after the jury's verdict in the Bierles' favor, and did not appeal from the judgment entered against it on that verdict. Further, that verdict was not challenged in any way by the Bierles in the District Court, even though they no doubt were disappointed that the jury awarded them only $5000 in actual damages. As to the finding of liability, it is self-evident that "[a] party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242, 59 S.Ct. 860, 860, 83 L.Ed. 1263 (1939). Moreover, the Bierles did not complain about the adequacy of the actual damages, nor did they ask the District Court

---

termine there was substantial evidence in support of the jury's verdict. *Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 477 (8th Cir. 1993). We consider the evidence in the light

most favorable to the verdict winner, giving that party the benefit of all reasonable inferences that may be drawn from the evidence. *Id.*

for additur, and so they have not preserved the issue of adequacy of actual damages for appellate review. *See Lockley v. Deere & Co.*, 933 F.2d 1378, 1390 (8th Cir.1991).

Rule 50 apparently permits grounds for a new trial to be considered on appeal from a judgment as a matter of law even though the verdict winner has not moved in the trial court for a new trial. Nevertheless, it is clear that in this situation we may consider only those asserted grounds that might have had a bearing on the portion of the case with respect to which the trial court has set aside the jury verdict, which in this case is only the jury's verdict awarding punitive damages. Our review is further limited in that we may consider only those grounds for new trial that arguably impact the submissibility of the Bierles' punitive damages claim as opposed to merely the adequacy of the award, such as faulty evidentiary rulings or imposition of an erroneous burden of proof. *See Neely*, 386 U.S. at 327, 87 S.Ct. at 1079. Our task thus becomes one of sorting among the seven grounds for new trial raised by the Bierles and determining which, if any, are relevant to the submissibility of the punitive damages claim.

■ We first discuss the asserted grounds for a new trial that do not warrant consideration on the merits because they are irrelevant to the Bierles' punitive damages claim. Three of the Bierles' new trial issues go only to the amount of compensatory damages: (1) the admission of evidence that the Bierles had other insurance that would have covered the accident; (2) the admission of the release executed in settlement of the Bierles' underinsured motorist coverage claim against Liberty Mutual; and (3) the admission of evidence as to whether Liberty Mutual paid more to settle the underlying claim than it was worth.

The Bierles argue that we should consider these allegations of error, even though we are reviewing only punitive damages issues, because the jury instructions related punitive damages to the amount of compensatory damages. We agree that the two were linked by an instruction. It was not, however, the submissibility of the punitive damages case but the amount of the punitive damages

award that was dependent to a degree on the amount of compensatory damages. Instruction 28 reads in pertinent part:

The law provides no fixed standards as to the amount of such exemplary damages, but leaves the amount to the jury's sound discretion, exercised without passion or prejudice.

In arriving at any award of exemplary damages, you are to consider the following:

1. Amount allowed in compensatory damages;

2. The nature and enormity of the wrong;

3. The intent of the wrongdoer;

4. The financial condition of the wrongdoer; and

5. All the circumstances attending the particular act involved, including any mitigating circumstances which may operate to reduce, but not defeat, the exemplary damage award.

The singular question the jury was to consider in determining whether the Bierles were entitled to punitive damages was the malice or willful and wanton conduct exhibited by Liberty Mutual. The amount of the actual damages award is immaterial to that question. Because the three issues listed in the previous paragraph go only to compensatory damages, and thus at most only to the **amount** of punitive damages, they are not relevant to the submissibility of the punitive damages claim and we therefore have no occasion to consider their merits.

■ The Bierles also claim that the District Court erred in refusing to allow voir dire of the venire regarding punitive damages. The jury that was selected to hear the case, however, awarded punitive damages; it was the District Court that later determined that, as a matter of law, the Bierles had failed to make a submissible case and the voir dire of the jurors was irrelevant to that decision. Therefore, even if the court's limitation of the voir dire was improper, it had no bearing on the decision to grant Liberty Mutual judgment as a matter of law and is not grounds for a new trial.

■ The Bierles also would have us grant them a new trial because the District Court

asked them to reveal their closing argument to Liberty Mutual. The court asked the Bierles for a narrative of closing argument beforehand because it was concerned that counsel for the Bierles would improperly argue the punitive damages question, as he had done during his opening statement to the venire on voir dire despite an admonition from the court. The court wanted to clear up any objections beforehand so that the closing could proceed without interruption. Counsel for the Bierles presented the court with only a two-page summary outline, with little detail, shortly before the argument began, which the court showed to Liberty Mutual. In any event, Liberty Mutual heard the Bierles' closing argument in its entirety before making its own argument, since the Bierles had the first and last word in closing argument. Considering counsel's earlier disregard for the court's warnings, we doubt that the District Court abused its discretion, *see Lee v. Rapid City Area Sch. Dist. No. 51-4*, 981 F.2d 316, 319 & app. 332 (8th Cir.1992) (en banc), but we find it unnecessary to reach the question. Closing arguments are not evidence and thus do not go to the submissibility of the case. It is difficult to see how the Bierles' case was prejudiced, as the jury that heard the arguments found in favor of the Bierles. Thus the alleged abuse of discretion would not be grounds for a new trial on the punitive damages claim.

■ That leaves us only two issues, both evidentiary questions, to consider on the question of whether the Bierles made a submissible case on punitive damages. First, the Bierles complain that the District Court improperly excluded evidence that they attempted to serve a subpoena to compel Liberty Mutual to produce a copy of the insurance policy. According to the Bierles, this was evidence of malice or willful and wanton behavior on the part of Liberty Mutual that should have been considered by the court when determining whether the Bierles had made a submissible case on punitive damages. The District Court refused to receive the evidence, finding there was an issue as to whether the subpoena was properly served

and also noting that, in any event, the subpoena was withdrawn by agreement of the parties and the policy eventually was produced without regard to the subpoena.[8]

■ The trial court has broad discretion on evidentiary matters, and its evidentiary rulings will not be disturbed unless we determine that the court abused its discretion. *Tioga Pub. Sch. Dist. # 15 v. United States Gypsum Co.*, 984 F.2d 915, 923 (8th Cir. 1993). Here, however, our initial inquiry is whether the Bierles' case on punitive damages would have been submissible had the evidence at issue been admitted. We conclude that it would not. The Bierles sought the subpoena less than a month after their first request for a copy of the insurance policy, and the fact that the subpoena was issued is not evidence of the malice the Bierles sought to prove. The court allowed testimony that there was another request for the policy on the date of the subpoena, but not that the request was made via a subpoena. This asserted ground of error affords the Bierles no basis for a new trial on their punitive damages claim.

Finally, the Bierles charge the District Court with error in excluding testimony that Liberty Mutual's conduct in handling the Bierles' claim violated South Dakota law forbidding an insurer from engaging in deceptive and unfair insurance practices, and in refusing to receive the statutes themselves as exhibits. *See* S.D. Codified Laws Ann. §§ 58-33-66 to -69 (Supp.1987 and 1990 revision). The proffered testimony was based on the evidence already in the case; no additional evidence of Liberty Mutual's conduct was offered. Moreover, Liberty Mutual was not charged administratively with violating the statutory scheme in handling the Bierles' claim, the only remedy the statutes provide. We doubt that the District Court erred in refusing testimony on a question of law in a state administrative matter that was not before the court. In any event, we conclude that such evidence, had it been received, would not have created an issue of fact for the jury on the question of punitive damages.

---

8. Liberty Mutual was of course aware that the Bierles wished to have a copy of the policy and had sought to obtain one by means of a subpoena.

The judgment of the District Court is affirmed.