# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-1423

_____

United States of America,                    *
                                             *
          Plaintiff - Appellee,              *
                                             *
Minnesota Center for Environmental           *
Advocacy; State of Wisconsin; Save           *
Lake Superior Association; State of          *
Minnesota; Minnesota Pollution               *
Control Agency,                              *
                                             *
          Intervenor Plaintiffs -            *
          Appellees,                         *
                                             *
United States Environmental                  *
Protection Agency; State of Michigan;        *
City of Duluth,                              *
                                             *
          Intervenor Plaintiffs,             *
                                             *   Appeal from the United States
          v.                                 *   District Court for the
                                             *   District of Minnesota.
Northshore Mining Company,                   *
                                             *
          Defendant - Appellant,             *
                                             *
County of Lake, Minnesota;                   *
Northeastern Minnesota Development           *
Association; Duluth Area Chamber of          *
Commerce; Village of Babbitt, Ranger         *
League of Municipalities and Civil           *
Associations; Village of Beaver Bay;         *
St. Louis County; Village of Silver          *

Bay; City of Superior; United States     *
Corps of Engineers; City of Two     *
Harbors; Lax Lake Property Owners     *
Association,     *
    *
         Intervenor Defendants.     *

_____

No. 08-1529

_____

United States of America,     *
    *
         Plaintiff - Appellant,     *
    *
Minnesota Center for Environmental     *
Advocacy; State of Wisconsin; Save     *
Lake Superior Association; State of     *
Minnesota; Minnesota Pollution     *
Control Agency,     *
    *
         Intervenor Plaintiffs -     *
         Appellees,     *
    *
United States Environmental     *
Protection Agency; State of Michigan;     *
City of Duluth,     *
    *
         Intervenor Plaintiffs,     *
    *    Appeal from the United States
    *    District Court for the
       v.     *    District of Minnesota.
    *
Northshore Mining Company,     *
    *
         Defendant - Appellee,     *
    *

County of Lake, Minnesota;      *
Northeastern Minnesota Development   *
Association; Duluth Area Chamber of   *
Commerce; Village of Babbitt, Ranger   *
League of Municipalities and Civil     *
Associations; Village of Beaver Bay;    *
St. Louis County; Village of Silver      *
Bay; City of Superior; United States     *
Corps of Engineers; City of Two       *
Harbors; Lax Lake Property Owners     *
Association,                          *
                                        *
        Intervenor Defendants.     *

_____

No. 08-1533

_____

United States of America,          *
                                          *
        Plaintiff - Appellee,      *
                                          *
Minnesota Center for Environmental   *
Advocacy; State of Wisconsin; Save    *
Lake Superior Association,       *
                                          *
        Intervenor Plaintiffs -     *
        Appellees,              *
                                          *
State of Minnesota; Minnesota      *
Pollution Control Agency,        *
                                          *
        Intervenor Plaintiffs -     *
        Appellants,            *
                                          *
                                          *

United States Environmental　　　　　*
Protection Agency; State of Michigan;　*
City of Duluth,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Intervenor Plaintiffs,　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Northshore Mining Company,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Defendant - Appellee,　　　*
　　　　　　　　　　　　　　　　　*
County of Lake, Minnesota;　　　　　*
Northeastern Minnesota Development　　*
Association; Duluth Area Chamber of　　*
Commerce; Village of Babbitt, Ranger　*
League of Municipalities and Civil　　　*
Associations; Village of Beaver Bay;　　*
St. Louis County; Village of Silver　　　*
Bay; City of Superior; United States　　*
Corps of Engineers; City of Two　　　　*
Harbors; Lax Lake Property Owners　　*
Association,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Intervenor Defendants.　　*

_____

Submitted: February 11, 2009
Filed: August 17, 2009

_____

Before BYE, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

-4-

Northshore Mining Company, the United States of America, and the State of Minnesota and the Minnesota Pollution Control Agency each appeal from the district court's[1] order holding that those portions of a 1975 injunction regulating air emissions from Northshore's taconite pellet operation at Silver Bay, Minnesota, were moot. For the reasons discussed below, we affirm.

## I.    BACKGROUND

### A.    1972–1975:  Federal Litigation and Injunction

In February 1972, the United States filed suit against the Reserve Mining Company ("Reserve"), seeking injunctive relief limiting the air and water emissions discharged from Reserve's iron ore processing facility in Silver Bay, Minnesota.  The United States alleged that the Silver Bay facility was discharging harmful cummingtonite-grunerite mineral fibers ("fibers") into the waters of Lake Superior and into the air above the Great Lakes in violation of various federal and state statutes and federal and state common law.[2]

After a 139-day bench trial, the district court issued a memorandum opinion and order granting injunctive relief to the plaintiffs.  *See United States v. Reserve Mining Co.*, 380 F. Supp. 11 (D. Minn. 1974), *modified and remanded sub nom. Reserve Mining Co. v. EPA*, 514 F.2d 492 (8th Cir. 1975) (en banc).  The district court found that the fibers discharged into the air by Reserve's Silver Bay facility were similar or

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2]Numerous entities petitioned to intervene as parties to the litigation, and the United States and Reserve moved to compel the addition of other entities.  By granting these petitions and motions, the district court added as plaintiffs, among others, the State of Minnesota ("Minnesota") and the Minnesota Pollution Control Agency ("MPCA").

identical to amosite asbestos, a known carcinogen. Although the court recognized that medical science had not yet determined what would constitute a "safe" level of airborne asbestos fibers, the court was satisfied that the amount of fibers discharged by the facility posed "a serious health hazard to the people exposed to it." *Id.* at 17. Thus, the district court concluded that Reserve's air emissions constituted a nuisance under federal and state common law and violated Minnesota's air pollution control regulations. *Id.* Based on these violations of state and federal law, the court enjoined the Silver Bay facility's discharge of fibers into the air, beginning at 12:01 a.m., the following day, April 21, 1974. *Id.* at 21. The injunction had the practical effect of requiring the closure of the facility.

Reserve immediately filed a motion to stay the district court's injunction pending an appeal on the merits, which this court granted, conditioned "upon a showing by Reserve that it is taking prompt steps to prepare and implement an appropriate plan for abatement." *Reserve Mining Co. v. United States*, 498 F.2d 1073, 1086 & n.15 (8th Cir. 1974). Shortly thereafter, this court sitting en banc modified the injunction in part and remanded the case to the district court. *Reserve Mining Co. v. EPA*, 514 F.2d 492 (8th Cir. 1975) (en banc). We agreed with the district court's conclusion that the Silver Bay facility's air emissions violated Minnesota's air pollution control regulations and constituted a nuisance under Minnesota state law. *Id.* at 524. We disagreed, however, with the district court's conclusion that the air emissions constituted a nuisance under federal common law because the evidence did not show that the emissions had interstate effects. *Id.* at 520-22. Additionally, we modified the district court's injunction as it related to air emissions, requiring that

> Reserve must use such available technology as will reduce the asbestos fiber count in the ambient air at Silver Bay below a medically significant level. According to the record in this case, controls may be deemed adequate which will reduce the fiber count to the level ordinarily found in the ambient air of a control city such as St. Paul.

*Id.* at 538-39. The parties refer to this requirement as the "control city standard." We allotted Reserve a reasonable time to design and implement measures to bring its facilities into compliance with the modified injunction. *Id.* at 537-38.

## B.     1976–2007:  Post-Injunction Developments and State Regulation

Following our en banc decision, Reserve proposed over $200 million in improvements and new construction to bring its Silver Bay facility into compliance with the terms of the modified injunction. In mid-1976, however, the MPCA resisted Reserve's proposed remedial measures by denying Reserve the permits necessary to construct and operate these improvements. Reserve sued in state court to compel the MPCA to issue the permits. The Minnesota Supreme Court ultimately resolved the dispute in Reserve's favor and remanded the matter to the state trial court for further proceedings. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 846 (Minn. 1977).

The MPCA complied with the Minnesota Supreme Court's order by issuing the requisite construction and operating permits; however, in doing so, the MPCA incorporated the injunction's control city standard into the operating permits. The permits required that "the ambient air shall contain no more fibers than that level ordinarily found in the ambient air of a control city such as St. Paul" and that "the fibers in the ambient air shall be maintained below a level which is injurious to human health or welfare in violation of Minnesota Statute Section 116.03(3)." *Reserve Mining Co. v. Minn. Pollution Control Agency*, 267 N.W.2d 720, 722 (Minn. 1978) (alterations omitted). Reserve objected to the MPCA's operating permit language in the remanded state action, and after the MPCA unsuccessfully tried to remove the dispute to federal court, *see Reserve Mining Co. v. Minn. Pollution Control Agency*, 434 F. Supp. 1191, 1193 (D. Minn. 1977) (remanding the case to state court because "[t]he question of standards and regulations imposed by state law is separate from the federal imposed ambient air standard"), the state trial court amended the permits by modifying the control city standard, *see Reserve Mining Co.*, 267 N.W.2d at 722. On

appeal, the Minnesota Supreme Court reinstated the original control city standard in the operating permits. *Id.* at 727.

After Reserve completed the improvements to the Silver Bay facility, the MPCA took air samples from Silver Bay and St. Paul in 1979 and 1980 to determine the cities' respective fiber counts. The test results showed that the fiber count in Silver Bay was less than that in St. Paul, thereby satisfying the control city standard in the injunction and the state permits. In October 1981, the parties stipulated to an administrative dismissal of the federal lawsuit, providing, however, that the federal district court would retain jurisdiction over the injunction. In 1989, Reserve sold its Silver Bay facility to the Northshore Mining Company ("Northshore"). The subsequent MPCA permits issued to Northshore contained the control city standard.

In 2005, believing that the fiber count in St. Paul had decreased since 1980, the MPCA informed Northshore that it was going to resume testing in Silver Bay and St. Paul to ensure continuing compliance with the control city standard. In December 2006, Northshore filed an administrative permit application with the MPCA, seeking to strike the control city standard from its state permits. In its application, Northshore argued that the control city standard was no longer necessary for two reasons: (1) the 1979 and 1980 tests demonstrated the effectiveness of the earlier abatement actions, and (2) even if the current fiber count in Silver Bay was then greater than that in St. Paul, the current Silver Bay fiber count was nevertheless below a "medically significant level." The MPCA denied the application in February 2007 because Northshore's request was a "major permit amendment" that required a more extensive application procedure. In May 2007, Northshore appealed to the Minnesota Court of Appeals, which affirmed the MPCA's decision. *Northshore Mining Co. v. Minn. Pollution Control Agency*, No. A07-0634, 2008 WL 2103550 (Minn. Ct. App. May 20, 2008) (unpublished). Northshore submitted a major permit amendment application in August 2008, and its efforts to secure the amendment are ongoing.

## C.     2007:  Injunction Revisited

In July 2007, while its appeal was pending before the Minnesota Court of Appeals, Northshore filed a motion with the federal district court seeking clarification of and relief from the injunction's control city standard under Federal Rule of Civil Procedure 60(b).  The district court denied Northshore's motion, concluding that Northshore lacked standing to bring its claim under Rule 60(b) because it had not demonstrated that its alleged injury would be fully redressed by a favorable ruling. *United States v. Northshore Mining Co.*, No. 72-0019, 2007 WL 4563418, at *3 (D. Minn. Dec. 21, 2007) (unpublished).  The district court reasoned that the control city standard had become an independent state standard as a result of its inclusion in Northshore's MPCA permits; thus, a favorable decision concerning the injunction would not affect Northshore's duty to comply with the state permits. *Id.* at *4.  The district court went on, however, to consider sua sponte the continuing need for the injunction, holding that

> the 1975 injunction no longer has any force or effect.  The injunction has been effectively incorporated into state administrative law, in the form of the "control city" language in Northshore's permits.  Any conclusion that the Court might make on the meaning of the "control city" standard would have no meaningful effect because Northshore, as the only party bound by the injunction, is also required to comply with the independent "control city" standard in its state permits.  The injunction has outlived its enforceability.  It therefore is best described as moot. *See* 43A C.J.S. Injunctions § 90 ("If the thing sought to be enjoined in fact takes place, is no longer taking place, or can no longer take place, the grant or denial of an injunction becomes moot.") . . . .

*Id.*  Accordingly, the district court ordered that "[t]he Injunction as modified by the Eighth Circuit Court of Appeals . . . is **MOOT**." *Id.* at *5.[3]

---

[3]As a threshold matter, we clarify the scope of the district court's order declaring sua sponte that "[t]he Injunction . . . is **MOOT**."  The injunction contains

Northshore, the United States, and Minnesota and the MPCA now appeal from the district court's order. In its appeal, Northshore does not challenge the court's judgment holding that the injunction's air-emissions provisions are moot. Instead, Northshore argues that the district court erred in concluding that Northshore lacked standing to bring its claim under Rule 60(b) and that the control city standard in the state permit operates as an independent administrative standard separate from the injunction. The United States in its cross-appeal argues that the district court erred in vacating the injunction as moot. Similarly, Minnesota and the MPCA in their cross-appeal "ask[] this Court to clarify that the federal injunction remains valid and in effect because Northshore failed to establish a legitimate basis for dissolving the injunction."

## II.    DISCUSSION

### A.    Jurisdictional Challenges

Before reaching the merits of the appeal and cross-appeals, we begin by analyzing jurisdictional challenges raised by Northshore and the United States. The United States contends that Northshore is not an aggrieved party entitled to exercise the statutory right to appeal from the district court's order because the district court's order granted Northshore all of the relief that it sought. Similarly, Northshore argues that the United States is not an aggrieved party entitled to exercise the statutory right

---

provisions regulating both air and water emissions from the Silver Bay facility. However, because Northshore sought relief from the district court concerning only the air-emissions provisions, because the court did not mention or discuss any of the water-emissions provisions, and because the parties to this action have all interpreted the district court's declaration as vacating only those portions of the injunction concerning the Silver Bay facility's air emissions, we conclude that the order pertains only to the air-emissions provisions and that the remaining water-emissions provisions remain intact.

to cross-appeal from the district court's order because it was not a beneficiary of the air-emissions provisions of the injunction since this court's 1975 en banc decision dismissed all of the air-emissions claims arising under federal law.

These jurisdictional challenges touch on a key rule of federal appellate practice, that "[o]rdinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980). "A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." *Id.* Likewise, "a litigant that is a party to the overall *case* may lack standing to appeal from a judgment [concerning] a *claim* to which it was not a party . . . [where] the appellants were not personally aggrieved by the judgment under appeal." *City of Cleveland v. Ohio*, 508 F.3d 827, 836 (6th Cir. 2007). "In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits . . . so long as that party retains a stake in the appeal satisfying the requirements of Art. III." *Deposit Guar. Nat'l Bank*, 445 U.S. at 334. However, "[a] party may not appeal from a judgment or decree . . . for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Bierle v. Liberty Mut. Ins. Co.*, 992 F.2d 873, 876 (8th Cir. 1993) (quoting *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939)).

We first address the question whether Northshore was aggrieved by the district court's order such that we have jurisdiction over its appeal. As a preliminary matter, we find that Northshore was the prevailing party in the district court and "received all that [it] has sought generally" by the district court's judgment, which vacated the air-emissions provisions in the injunction and entirely relieved Northshore from its legal obligation to comply with those provisions. *See Deposit Guar. Nat'l Bank*, 445 U.S. at 333. This finding is supported by the fact that Northshore did not challenge the judgment in its appeal, and it has actively defended the judgment against attacks by the United States and Minnesota and the MPCA. Thus, having received all that it has

sought generally, Northshore may only take an appeal from an adverse ruling collateral to the judgment if the collateral ruling is necessary to support the district court's order. *See Bierle*, 992 F.2d at 876.

Northshore claims that it is aggrieved by the district court's collateral ruling denying its Rule 60(b) motion for lack of standing—a conclusion based on the court's finding that the control city standard "has evolved into and also operates as an independent administrative standard rooted in state law." *Northshore Mining Co.*, 2007 WL 4563418, at *3. While we agree with Northshore that the district court erred in concluding that it lacked a redressable injury necessary to pursue its Rule 60(b) motion, we disagree with Northshore's assertion that this error necessarily makes Northshore a party aggrieved by the district court's order. The district court's erroneous conclusion that Northshore lacked standing to bring its claim under Rule 60(b) was immaterial to the court's ultimate judgment vacating the injunction. *See Pierson v. Dormire*, 484 F.3d 486, 491 (8th Cir. 2007) ("[A] district court can grant relief from a judgment pursuant to Rule 60(b) *sua sponte*."), *vacated in part on other grounds*, 276 Fed. Appx. 541 (8th Cir. 2008) (unpublished per curiam); *Booker v. Special Sch. Dist. No. 1*, 585 F.2d 347, 352 (8th Cir. 1978) ("There is no question that in a proper case a federal district court that has issued an injunction may vacate it or modify it . . . ."). Because the alleged adverse collateral ruling is not necessary to the district court's judgment and because Northshore does not challenge the judgment itself, we conclude that Northshore may not appeal from the district court's order. *See*

*Deposit Guar. Nat'l Bank*, 445 U.S. at 333.[4]  Accordingly, we dismiss Northshore's appeal.  *See id.*

We next address the question whether the United States was aggrieved by the district court's order such that we have jurisdiction over its appeal.  The United States claims that it was aggrieved by the district court's judgment because it was a party to the original injunction.  The United States argues that its status as a party to the injunction is law of the case and is supported by its active participation throughout the history of the federal litigation.

There is no dispute that the United States is a party to the injunction and has been actively involved in this litigation since its onset in 1972.  *See Reserve Mining Co.*, 514 F.2d at 501-06.  However, these facts alone do not dispose of the inquiry; rather, we must investigate whether the United States was "personally aggrieved by the judgment under appeal."  *See City of Cleveland*, 508 F.3d at 836.  Where, as here, an injunction protects differing interests of multiple parties, a party's aggrieved status "does not extend to the vindication of the private interests of third parties."  *New York ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996).  After our en banc decision, the United States' interests in the case were limited to preventing the

---

[4]We note that Northshore was not aggrieved by the district court's collateral holding that the control city standard is an independent administrative standard rooted in state law.  A Minnesota state court would not be bound to give preclusive effect to that holding because whether the state permits survived the dissolution of the federal injunction is ultimately a question of state law.

We further note that Northshore was not aggrieved by a statement in the district court's order purporting to reject Northshore's "safe-harbor theory"—that "as long as Northshore's emissions are below the level of fibers found in St. Paul in 1978 through 1980, Northshore has complied with the terms of the injunction."  *Northshore Mining Co.*, 2007 WL 4563418, at *4 n.4.  This statement would not have preclusive effect in future litigation because the statement was dicta; it was not necessary for the district court to interpret a provision of the injunction that it went on to vacate as moot.

-13-

Silver Bay facility from violating the Federal Water Pollution Control Act, 33 U.S.C. §§ 1160(c)(5) and (g)(1) (1970), and the Refuse Act, 33 U.S.C. § 407 (1970), which was accomplished through the injunction's water-emissions provisions. *See Reserve Mining Co.*, 514 F.2d at 529-31. The United States' interests, however, did not extend to the Silver Bay facility's violations of Minnesota's air pollution control regulations, which were the only violations remedied by the injunction's air-emissions provisions. *See id.* at 520-22. Because the district court's judgment concerns only the air-emissions provisions of the injunction, not the water-emissions provisions, we conclude that the United States' interests are not affected by the district court's order. Thus, we conclude that the United States is not an aggrieved party, and we likewise dismiss its cross-appeal.[5]

## B.     District Court's Judgment Vacating the Injunction

Left only with their cross-appeal, Minnesota and the MPCA urge us to "affirm the district court's denial of Northshore's [Rule 60(b)] motion and clarify that the federal injunction is still valid." By asking us to reverse the district court and hold that the injunction remains valid, Minnesota and the MPCA ask us to conclude that the district court erred by vacating the air-emissions provisions of the injunction.

We review the district court's modification of an injunction for abuse of discretion, *see Keith v. Mullins*, 162 F.3d 539, 540-41 (8th Cir. 1998), recognizing that "a federal court of equity has inherent jurisdiction in the exercise of its equitable discretion and subject to appropriate appellate review to vacate or modify its injunctions," *Booker*, 585 F.2d at 352. An injunction may become moot "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will

_____

[5]As a practical matter, the arguments made by the United States in its cross-appeal are virtually identical to the arguments made by Minnesota and the MPCA in their cross-appeal, which we address in the next section.

be repeated.'" *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)). The determination of whether it is appropriate to dissolve or modify an injunction "rests primarily on the shoulders of the district court that issued the injunction in the first place." *Booker*, 585 F.2d at 353. The district court may exercise this power when it realizes that the injunctive relief is no longer needed due to intervening circumstances. *See Keith*, 162 F.3d at 540-41.

The Second Circuit was faced with a similar situation concerning a request for injunctive relief in *New York v. Seneci*, 817 F.2d 1015, 1016 (2d Cir. 1987). In *Seneci*, the State sought to enjoin Seneci and others "from future racketeering practices and fraudulent acts" under New York Executive Law § 63(12) by filing suit in New York state court. *Id.* After the case spent three years stalled in state court, the State sought the same injunctive relief in federal court, alleging violations of § 63(12) and the federal RICO statute. *Id.* The federal district court dismissed for lack of standing, and the State appealed. *Id.* After the Second Circuit heard oral argument on the appeal, the state court in the parallel action entered an order permanently enjoining Seneci and others from engaging in future fraudulent practices. *Id.* at 1017. Accordingly, the Second Circuit found that the state court's injunction provided the State with "all of the . . . relief requested in the present case" and dismissed the appeal as moot. *Id.*

Here, we conclude that Minnesota and the MPCA have not shown that the district court abused its discretion by vacating sua sponte the injunction's air-emissions provisions. When we modified the injunction in 1975, we did so to prevent Reserve from emitting harmful levels of fibers into the air in violation of Minnesota's pollution control regulations. At that time, neither Minnesota nor the MPCA had pursued any parallel state court or administrative proceedings. Since then, however, the MPCA has issued, litigated, and enforced permits addressing the same concerns regarding Reserve's, and later Northshore's, compliance with Minnesota's air

pollution control regulations. In fact, these permits contain the exact same standard—the control city standard—as that contained in the injunction.

In light of the fact that the MPCA's permits contain identical language to our 1975 injunction, specifically requiring Northshore's fiber emissions to be below a medically significant level and below the fiber level in the ambient air of a control city such as St. Paul, we find that "[the MPCA] has given [Minnesota and itself] all of the . . . relief requested in the present case." *See Seneci*, 817 F.2d at 1017. The injunction and the MPCA's permits were crafted to afford the same relief—preventing Northshore from violating Minnesota's air pollution control regulations by limiting the output of fibers. *See id.* Moreover, Minnesota and the MPCA have not shown any reasonable expectation that, in the absence of the injunction, Northshore is likely to repeat its violation. *See W.T. Grant Co.*, 345 U.S. at 633. On the contrary, the thirty-seven-year history of this litigation has demonstrated Minnesota and the MPCA's unwavering commitment to ensuring that the operations of Northshore's Silver Bay facility comply with Minnesota's air pollution control regulations. Based on our recognition of the tools available to Minnesota and the MPCA to enforce Northshore's regulatory permits, *see, e.g.*, Minn. Stat. §§ 116.07, 116.072, and the absence of any evidence suggesting that such state enforcement would fail to prevent Northshore from violating Minnesota's air pollution control regulations, we cannot conclude that the district court abused its discretion in vacating the air-emissions provisions of the injunction.

## III. CONCLUSION

For the foregoing reasons, we dismiss Northshore's appeal, dismiss the United States' cross-appeal, and affirm the district court's conclusion that the air-emissions provisions of the injunction are moot.

_____